## DAVIS v. DAVIS.

### Opinion delivered May 17, 1926.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF DESCRIPTION OF LAND.—A family settlement dividing the lands of a testator among his devisees is sufficient, within the Statute of Frauds, where the tracts assigned to the several devisees are described in such manner that they may be identified by parol evidence.

2. DESCENT AND DISTRIBUTION—CONSTRUCTION OF FAMILY SETTLEMENT.—Where a family settlement stipulated that each of a testator's devisees should "get" a certain tract of land, the intention was that the party named as getting the land was to take title thereto in severalty.

3. FRAUDS, STATUTE OF—SUFFICIENCY OF MEMORANDUM OF SALE OF LAND.—Where a written contract for the sale of land is valid under the Statute of Frauds, its performance will not be defeated because there was another agreement not embraced in the writing.

4.  DESCENT AND DISTRIBUTION—ENFORCEMENT OF FAMILY SETTLE-
    MENT.—An agreement whereby the devisees in a will divided the
    lands which had been devised to them will be enforced, although
    the children of a deceased brother who had no interest in the
    lands under the will did not participate in the agreement.

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*John E. Miller* and *Culbert L. Pearce,* for appellant.
*Brundidge & Neelly,* for appellee.

SMITH, J.    L. D. Davis died October 19, 1924, leaving two sons and a daughter, the appellant and appellees, and four grandchildren, who are the children of J. M. Davis, a deceased son.

On February 6, 1922, L. D. Davis executed a will, devising to Ada C. Langford, a daughter, and A. S. and H. G. Davis, his sons, all of his personal property and real estate after the payment of his debts. The effect of the will was to exclude the heirs of the deceased son, J. M. Davis, it being recited in the will that the testator had given this son a deed to sixty acres of land and had substantially aided him in purchasing another one hundred and twenty-acre tract, thereby relieving the testator of further duty to the heirs of this son.

On September 5, 1922, the testator added a codicil to the will, by which he bequeathed to his daughter Mrs. Langford the northwest quarter northwest quarter section 19; to his son H. G. Davis the west half southwest quarter section 17 and the west half northwest quarter section 20; and to his son A. S. Davis a part of the northeast quarter section 19, containing fifteen acres, all the land being in township 6 north, range 9 west.

After the death of L. D. Davis there was some negotiation between the daughter and the two sons in an effort to divide their father's land contrary to the will. There was some threat of a contest of the will, on the ground that the testator was lacking in testamentary capacity. Certain neighbors participated in the discussion, and offered suggestions. Finally the parties entered into the following agreement: "We hereby agree satis-

factory between ourselves and is satisfactorily between all parties concerned, H. G. Davis is to get the home place, 80 acres. A. S. Davis is to get lower bottom, 80 acres. Ada Langford is to get upper bottom, 40 acres, and 15 acres known as the Mart Emmons place.''

Later H. G. Davis, after considering the matter further, declined to perform the agreement by making the necessary exchange of deeds, and his brother and sister brought suit against him to compel the specific performance of the contract of settlement, and tendered into court deeds conveying to H. G. Davis the land which it was agreed he should have in the settlement contract.

The court found the fact to be that the parties had entered into the written contract to divide their father's land, and decreed a specific performance of the agreement.

For the reversal of this decree it is insisted that the agreement was not sufficiently definite and certain to be the subject of a suit for specific performance, and further, that the contract did not express the entire agreement of the parties.

We have had before us a number of cases wherein it was sought to specifically enforce contracts for the conveyance of land, wherein it was alleged, in opposition to granting that relief, that the written instrument evidencing the agreement to convey was not sufficiently definite to warrant a decree granting the relief prayed. Two of the latest of these cases are reported in 168 Ark., one being the case of *Harper* v. *Thurlow*, found at page 491, the second that of *Richardson* v. *Stuberfield*, reported at page 713. In the last-mentioned case it was said: "It is well settled by these and other decisions of this court that every contract for the purchase of land must define its identity and fix its locality, or there must be such a description as, by the aid of parol evidence, will readily point to its locality and boundaries. An agreement for the sale of land which is required to be in writing by the Statute of Frauds must be certain in itself, or capable of being made certain by reference to something else.''

The still later case of *Moore* v. *Exelby,* 170 Ark. 908, reviews the earlier cases on the subject, and it would serve no useful purpose to again review them. The contract involved in that case was made and evidenced by letters exchanged between the parties, none of which purported to describe the land involved, but it was said that "the letters indicate that from the beginning both parties definitely understood the tract of land which was the subject of their negotiations."

The plaintiffs in this case and certain neighbors testified that the lands of L. D. Davis were well known by the names which were employed to designate them in the contract of settlement. The contracting parties were well known to be the heirs of L. D. Davis, deceased, who owned a farm known as the home place, another as the lower bottom place, another as the upper bottom place, and a fifteen-acre tract of land known as the Mart Emmons place. We think these designations furnished a key by which the lands there apportioned are made certain, and that the contract meets the requirements of the Statute of Frauds as announced in the case of *Richardson* v. *Stuberfield, supra.*

It is insisted that the contract was indefinite, in that it does not recite what was to be done with these lands, the phrase "to get" being too indefinite for that purpose.

It will be remembered that the contract was made to effect a family settlement, a thing favored by the law, and that it contemplated the subsequent exchange of deeds, wherein more definite descriptions of the land would be employed, and we think there is no difficulty in determining that, in saying each party was "to get" a certain tract of land, it was intended that the party named as getting the land was to have that land, take title thereto in severalty, and we think this conclusion is warranted by the language of the instrument itself without reference to the parol testimony, which very clearly shows that this was in fact the meaning of the language employed.

It is insisted that the writing did not fully express the agreement of the parties. This contention is based upon the testimony of one or more of the neighbors, who testified that it was also agreed that appellant H. G. Davis was to allow his brother A. S. Davis the use of a tenant house for a year, which was on the land assigned to H. G. Davis.

In answer to this contention it may be said that, if the contract is not void under the Statute of Frauds— and we have concluded that it is not void as failing to meet the requirements of that statute—the performance of the contract is not to be defeated because there was another agreement not embraced in the writing. At any rate, A. S. Davis is not asking the enforcement of this additional consideration, if it was in fact a part of the agreement. He has waived any right to ask a reformation of the agreement, and appears to be satisfied with the enforcement of the contract as written.

It is finally insisted that appellees, the plaintiffs below, are not entitled to equitable relief because they have not come into court with clean hands, in that they ask, in effect, that their father's lands be divided as if there were no will, and yet do not take into account the minor children of a deceased brother, who would be entitled to share in the division of the estate if the testator be treated as having died intestate.

In answer to this contention it may be said that the will was duly probated, and no complaint on behalf of the minors has been made; at any rate they are not affected by the settlement. Their right to contest the will, if it were thought proper so to do, was not involved, and they are not parties to this litigation. If the recital of the will is true, that the deceased son had been given property equal in value to what this son's share would have been had there been no will, this son, and his heirs after him, would be charged with the value of that property as an advancement if the will had been set aside. Section 3485, C. & M. Digest.

The parties to the will divided the lands which had been devised to them, and in which the children of the deceased brother had no interest under the will, and we see nothing in this conduct which would warrant a court of equity in denying them the relief prayed if they were otherwise entitled to it.

We think the decree correct, and it is affirmed.