TRANTHAM *v.* TRANTHAM, EXECUTRIX.

4-9880 252 S. W. 2d 401

Opinion delivered November 10, 1952.

*Ed B. Cook,* for appellant.

*Marcus Evrard,* for appellee.

HOLT, J. N. W. Trantham died testate December 21, 1951. He left surviving his widow, Mrs. Beulah Trantham, and two sons by a former marriage, Clem Owen and Kim Roy Trantham. Beulah Trantham was named executrix of his estate.

The present suit grew out of a claim of $500 filed against the estate by Clem, which was disallowed by the executrix, and on appeal to the Probate Court, the action of the executrix was affirmed. This appeal followed.

The facts are not in dispute. Appellant's claim, *supra,* contained this language: "The undersigned has a claim or demand against the estate of N. W. Trantham, deceased, for the sum of Five Hundred ($500) Dollars, founded on contract and evidenced by two promissory notes, copies of which are attached hereto."

On September 15, 1945, N. W. Trantham and his two sons signed an instrument called an "Agreement" which provided in part: "This agreement is entered into between N. W. Trantham . . . and his sons, Clem Owen Trantham and Kim Roy Trantham, . . . and is intended to reflect an agreement between the parties with reference to the disposition of N. W. Trantham's estate. . . . It is the desire of the parties that each of the sons who are parties hereto shall receive from their father, either before or after his death, at his convenience and option the sum of One Thousand ($1,000) Dollars. At the time of the execution of this agreement the father has already advanced to Clem Owen Trantham the sum of $250 but has made no similar advancement to Kim Roy Trantham. . . .

"For the purpose of putting into the hands of his sons some concrete evidence of what amount will still be unpaid after the father's death, N. W. Trantham is executing and delivering to Clem Owen Trantham three

notes for the sum of $250 each, to bear no interest, and providing that they are payable after his death, but reserving to him the right to pay any or all of said notes before his death. For the same purpose, the father is delivering to Kim Roy Trantham four notes for $250 each. . . .

"N. W. Trantham is executing a will carrying substantially these provisions, and, as hereinbefore stated, the purpose of this agreement is to give evidence of the fact that those provisions of the will have been included in there with the consent and agreement of the parties affected and with their approval."

The alleged notes referred to and executed by N. W. Trantham on the same date are all identical and each provides: "NOTE—Blytheville, Arkansas, September 15, 1945—On demand after my death, I direct and command the executor of my will or the administrator of my estate to pay to my son, Clem Owen Trantham, the sum of Two Hundred Fifty and No/100 Dollars, without interest.

"This note is given to be retained by my son as evidence of the fact that the amount here mentioned is payable to him from my estate under the provisions of my last will and testament, executed on the date hereof, if this note is still outstanding at the time of my death. I reserve the right, at my own sole option, to pay to my son the amount hereof during my lifetime upon surrender and cancellation of this note."

The will, *supra*, also bearing date of September 15, 1945, contains (among others) this provision: "Prior to the execution of this will I have agreed with my sons, Kim Roy Trantham and Clem Owen Trantham, that each of them shall receive from me during my lifetime, or from my estate after my death, the sum of One Thousand Dollars ($1,000), and before the execution of this will I have actually given Clem Owen Trantham the sum of $250 upon the amount agreed to be given to him.

"In order that there may be tangible evidence available to my sons after my death, from which they may

show what amount is due them under our agreement, from my estate, I have, after the payment of the above amount to Clem Owen Trantham, delivered to him three notes signed by me for the sum of $250 each; and, since I have actually paid no money to my son, Kim Roy Trantham, I have delivered to him four notes for the sum of $250 each. All notes provide that they are payable on demand after my death, without interest, and that I have the right at my own option to pay any of the notes prior to my death. If I advance any further sums to either of my sons during my lifetime, each such advance will be made in the sum of $250 and upon making such advance I will take up one of the notes here referred to.

"I, therefore, will and bequeath to each of my sons, out of the property of my estate, a sum of money equal to the aggregate principal amount of all of the notes, such as are here described, that such son shall still hold at the time of my death, which sum shall be paid upon the surrender of the notes so held by him."

This will was later, on June 13, 1951, revoked by another will which, in addition to the revoking clause, contained this provision: "I will and bequeath to my son, Kim Roy Trantham, the sum of two hundred fifty dollars ($250), upon the condition, however, that this bequest shall be accepted by him in full settlement and satisfaction of any claim which he may have or claim to have against my estate under any agreement, contract or other thing made or said to have been made between us during my lifetime; and if my said son shall file, present or assert any such claim against my estate, then in that event, it is my will and command that this section of my will shall be rendered null and void upon the presentation of such claim by him, and he shall take nothing under the provisions of my will in such event. This bequest to my said son, when added to other sums which I have advanced to him during my lifetime, will equalize him with advances which I have made during my lifetime to my other son, Clem Owen Trantham."

The alleged notes, agreement and the first will, above, all executed on the same date (September 15,

1945), were so interlocked with reference to the same facts, that they must be read together to get at their meaning and effect. When this is done, it will be observed that the alleged notes provided for payment after the father's death and were given to the sons "as evidence of the fact that the amount here mentioned is payable to him from my estate under the provisions of my last will and testament, executed on the date hereof" (9-15-45) unless paid by the father during his lifetime. No consideration is set out or mentioned.

The agreement was executed, on the same date, (9-15-45) in which, in effect,—without mentioning any consideration,—the same facts were recited, and which also provided that he, Mr. Trantham, was executing a will simultaneously which embodied, in effect, the provisions of the alleged notes and agreement "in order that there may be tangible evidence available to my sons after my death," to show what amount may be due them "under our agreement." On the same date, (9-15-45) Mr. Trantham did execute the first will, above, embodying, in effect, the provisions of the alleged notes and agreement.

The undisputed evidence shows that Mr. Trantham was under no obligation to leave any part of his estate to his two sons. He owed them nothing at his death according to the undisputed testimony of the stepmother, Mrs. Beulah Trantham, executrix. He, of course, had the right to dispose of or will his property as he pleased. As indicated, there was no evidence, whatever, of any consideration to support the alleged notes, and the agreement, to will his two sons $1,000, and no consideration was recited in any of these instruments. It is fundamental law that "a consideration is essential to the validity of every contract," *Catlin* v. *Horne,* 34 Ark. 169.

Mr. Trantham had the right to revoke the first will made in 1945, and he did revoke it as indicated by a second will on June 13, 1951. The parties are therefore bound by this latter will.

The judgment is correct and is affirmed.