JACKSON *v.* SMITH.

5-861                          287 S. W. 2d 571

Opinion delivered March 5, 1956.

*Wiley W. Bean* and *D. B. Bartlett*, for appellant.

*Richard Mobley,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a suit by appellants, Mrs. Collins and Mrs. Jackson, to set aside —on the grounds of fraud and imposition—a deed they executed and delivered to the appellees, Smith and Norvell. The Chancery Court denied the appellants the prayed relief and this appeal resulted.

Mr. James A. Poteet lived in Clarksville and had four sisters, two of whom are the appellants, Mrs. Collins and Mrs. Jackson. The other two sisters predeceased Mr. Poteet, and each left children, one child being the appellee, Mr. Bernice Smith, and another being the appellee, Mrs. Luther Norvell. When Mr. Poteet suffered a stroke, Mrs. Collins and Mrs. Jackson were promptly notified at their homes in California. They came to Clarksville in an automobile, accompanied by Mrs. Collins' husband and Mrs. Jackson's son; and arrived on Tuesday, February 23, 1954, a day before Mr. Poteet died. The Collins stayed in the Smith home, and the Jacksons in the Norvell home. Mr. Poteet was buried on Thursday, February 25th. He died intestate, and his estate consisted of an automobile and thirty acres of land.

On Friday morning, February 26th, Mrs. Collins and her nephew, Mr. Bernice Smith, had a conversation in which it was agreed that Mrs. Collins and Mrs. Jackson would convey to Mr. Bernice Smith and Mr. Luther Norvell (husband of Mrs. Luther Norvell) all interest in the estate of Mr. Poteet, and, in return, Mr. Smith and Mr. Norvell would pay all debts of the Poteet estate. Mrs. Jackson and Mr. Norvell also agreed to this arrangement. These conversations were on Friday. On Sunday the Collins and the Jacksons drove to Fort Smith to see some other relatives. Then on Monday, March 1st, the Collins, Jacksons, Smiths and Norvells went to an attorney in Clarksville, who advised all parties as to procedure,

administration, heirship, etc. The next day (Tuesday, March 2nd) a deed[1] was prepared wherein all the heirs of Mr. Poteet were to convey all interest in the estate to Mr. Smith and Mr. Norvell, in consideration that the grantees assumed and agreed to pay all debts of the estate of Mr. Poteet. The deed was duly signed and acknowledged by Mrs. Collins and Mrs. Jackson on Tuesday, March 2nd; and taken by them to the other grantors to likewise sign and acknowledge. The appellants took the deed to California and obtained its execution by a number of the nieces and nephews, and returned it to Mr. Smith and Mr. Norvell.

Several weeks after March 2nd, Mrs. Collins' son, J. M. Walton, went to Clarksville from California, and learned that the Poteet thirty-acre tract had a value estimated from $7,500.00 to $12,500.00; and this suit was filed by Mrs. Collins and Mrs. Jackson to set aside the deed they had executed;[2] and they claimed that they had been defrauded and imposed on by Mr. Smith and Mr. Norvell. As aforesaid, the Chancery decree was adverse to Mrs. Collins and Mrs. Jackson; and they have appealed, claiming: (a) that the deed is not within the "family settle-

---

[1] The deed read in part as follows: "We, Nora Poteet Collins, Nellie Poteet Jackson" (and other named heirs of James A. Poteet, deceased) "for and in consideration of the sum of ONE DOLLAR ($1.00) to us paid in hand, and to each of us, the receipt of which is hereby acknowledged by LUTHER NORVELL and H. B. Smith, and, the assumption by the said LUTHER NORVELL and H. B. SMITH of the indebtedness existing on account of a promissory note heretofore executed by the said James A. Poteet, deceased, in favor of Mrs. May Kavatum, for the sum of Three Thousand Dollars, with interest at the rate of Ten per cent per annum (10%), and said note being secured by a Realty Mortgage upon a portion of the lands herein conveyed, duly recorded, in Book 32 at Page 440 of the deed records of Johnson County, Arkansas, AND, the further assumption by the said LUTHER NORVELL and H. B. SMITH of all other indebtedness of the said James A. Poteet, deceased, including expense of last sickness, funeral, burial, and any and all claims and demands against the estate of the said James A. Poteet, deceased, DO HEREBY GRANT, SELL AND QUIT-CLAIM unto the said LUTHER NORVELL and H. B. SMITH, and unto their heirs and assigns forever, the following described land, situated in the County of Johnson, State of Arkansas, to-wit: . . ." (Here follows description of the land—approximately thirty acres—and the 1949 Chevrolet car.)

[2] None of the other grantors in the deed has joined with Mrs. Collins and Mrs. Jackson in this suit.

ment'' rule;[3] (b) that, even if the deed be a ''family settlement,'' it should be set aside because of fraud and imposition;[4] (c) that the appellants were not required to investigate the value of the property;[5] and (d) that the appellants have proved fraud and imposition practiced on them by Mr. Smith and Mr. Norvell.[6]

That the deed from Mrs. Collins and Mrs. Jackson to Mr. Smith and Mr. Norvell is within the ''family settlement'' rule is too clear to admit of doubt. *Pfaff* v. *Clement*, 213 Ark. 852, 213 S. W. 2d 356, is complete authority for such conclusion. But, even as a ''family settlement,'' the deed cannot be upheld if the evidence shows that either fraud or imposition was practiced. In *Pfaff* v. *Clement* (*supra*), we quoted the language of Mr. Justice FRAUEN-THAL in *Martin* v. *Martin,* 98 Ark. 93, 135 S. W. 348:

''The courts of equity have uniformly upheld and sustained family arrangements in reference to property *where no fraud or imposition was practiced.''* (Italics our own.)

So the real question in the Trial Court was whether Mrs. Collins and Mrs. Jackson established that either fraud or imposition was practiced on them; and the question on appeal in this Court is whether the decision of the Chancellor is against the preponderance of the evidence.

In looking at all of the facts and circumstances, the following matters are impressive:

(1) The evidence shows that neither Mr. Smith nor Mr. Norvell knew the value of the thirty acres of land. Mr. Smith was a tractor mechanic and Mr. Norvell was a carpenter and bricklayer. Although they had both

---

[3] On this point they cite *Million* v. *Taylor*, 38 Ark. 428; and *Richards* v. *Sutter*, 94 Ark. 621, 125 S. W. 1018 (the full text of the opinion may be found only in the Southwestern Reporter) ; and seek to distinguish the case at bar from *Pfaff* v. *Clements*, 213 Ark. 852, 213 S. W. 2d 356.

[4] On this point they cite *Faulkner* v. *Faulkner*, 222 Ark. 121, 257 S. W. 2d 570.

[5] On this point they cite *Evatt* v. *Hudson*, 97 Ark. 265, 133 S. W. 1023.

[6] On this point they cite *Stewart* v. *Clark*, 195 Ark. 943, 115 S. W. 2d 887; and *Barner* v. *Handy*, 207 Ark. 833, 183 S. W. 2d 49.

lived in Clarksville many years, neither had ever been engaged in the real estate business. The last real estate transaction of either of them was in 1946 when Mr. Smith bought a lot on West Main Street in Clarksville. Furthermore, in all the conversations with Mrs. Collins and Mrs. Jackson, neither Mr. Smith nor Mr. Norvell undertook to claim any knowledge of the value of the property. So there were certainly no misrepresentations knowingly made.

(2) While Mrs. Collins and Mrs. Jackson were in Clarksville, they viewed the thirty acres of property here involved; and they had ample opportunity to consult anyone they desired regarding the value of the property.

(3) At the time of the original conversation between Mr. Smith and Mrs. Norvell on Friday morning, February 26th, the parties had been of the impression that Mrs. Collins and Mrs. Jackson owned all of the interest, since they were the only two surviving sisters of Mr. Poteet. When the parties went up to the attorney's office on Monday, March 1st, he correctly told them that the heirs of the two deceased sisters had interests in the property; and Mrs. Collins and Mrs. Jackson both agreed to get these other heirs to sign the deed.

(4) Mr. Smith and Mr. Norvell told Mrs. Collins and Mrs. Jackson about the $3,000.00 mortgage on the land; about the approximate amount of the hospital and nurses' bills; and they all knew the funeral expenses. Mr. Smith and Mr. Norvell had personally guaranteed the hospital and nurses' bills, and Mr. Smith was not positive but what he and Mr. Norvell would lose money in making the deal with Mrs. Collins and Mrs. Jackson. One witness, who was an aunt of Mrs. Luther Norvell, said that Mrs. Collins, in discussing the matter with this witness on Tuesday night, March 2nd, said that she (Mrs. Collins) was glad that Smith and Norvell had taken the deed and ''she hoped they made good on it and she said she wouldn't mind if they would make a million dollars.'' Another witness, who talked to Mrs. Collins after she had signed the deed and before she went back to California, said that

Mrs. Collins said she was happy and relieved that Mr. Smith and Mr. Norvell had taken over the property; and Mr. Collins was there at the time of the conversation.

(5) Mrs. Collins and Mrs. Jackson left Clarksville Wednesday morning, March 3rd, to return to California. They took the deed with them and got most of the other heirs to execute it, and then later returned it to Mr. Smith and Mr. Norvell. Just when the deed was mailed from California is not shown; but one of the acknowledgments is dated April 3, 1954; so the deed must have been in the possession of the appellants for over a month after they left Clarksville; and that is significant, in view of the next matter to be mentioned.

(6) It was some time before March 27th that Mrs. Collins' son, Mr. Walton, went from California to Clarksville to investigate the value of the Poteet thirty acres; and on that trip, Mr. Walton offered Mr. Smith and Mr. Norvell $1,000.00 to rescind the deed.[7] Mr. Walton's trip to Clarksville was on March 27th and he announced he was going to call his mother that night and stop the deed. Yet, on April 7th, Mrs. Collins wrote the Norvells that as far as she was concerned the deed was valid.[8] Thus, even

---

[7] That Mr. Walton used little or no tact or diplomacy in his conversations with Mr. Smith and Mr. Norvell, and antagonized them to such an extent that they would not have dealt with him on any basis, is probably reflected from Mr. Norvell's testimony at the time of the trial. Mr. Walton, in testifying of his visit with Mr. Norvell, quoted himself as using this language to Norvell: "Why don't you just be fair about this thing—the way I see it you're going to make some money—and let's destroy those papers that have been signed and I will compensate you to the amount of five hundred dollars." And in talking to Mr. Smith in the March visit, Mr. Walton testified at the trial that he said this to Mr. Smith: "You live in a small town. I don't see how you can afford a case of fraud thrown at you."

[8] Mrs. Collins' letter read in part: "I guess I ought to have answered your letter sooner, Luther. I knew Merle had gone to Arkansas. He wrote me from Denver and said he was going to Tulsa, Oklahoma and was going on to Clarksville. I don't want you or Bernice to worry about papers. I signed them, and as for my part, my signature will still be on the papers, and I hope Lillian and the three boys will sign. I am not going back on my word. Merle thinks we should have something out of it, and maybe we could if Jim had made a will; but the way he left things, I could not see anything there for me or any of us. If we were living there we would have taken it and tried to do something about it, but I felt that we would only be bringing trouble to ourselves, and I am not young any more. It would worry me just too much and I hope and pray that everything will come out all right for you and Bernice."

after Mr. Walton had investigated the value of the property, his mother, Mrs. Collins, still wrote that she did not desire to rescind. It was not until August 6th that Mrs. Collins decided to attempt rescission; and this suit was filed on August 17, 1954.

There are many other salient facts in the record, which is over four hundred pages. The Chancellor heard the witnesses testify and then took the case under advisement, and rendered a 27-page memorandum opinion which shows study and learning regarding both the facts and the law. The real question before us is whether the findings of the Chancery Court are against the preponderance of the evidence. When we consider that neither Smith nor Norvell was posted on real estate values; that they never attempted to represent the value of this property to the appellants; that the appellants viewed the land; that Mrs. Collins' husband was with her and Mrs. Jackson's son was with her; that the matter was not a "hurry-up" deal but was discussed from Friday until Tuesday; that no attempted rescission was made for several months, and then only after Mr. Walton had antagonized and threatened the appellees—when we consider all these matters and the other facts and circumstances in the record—we cannot say that the Chancellor's findings are against the preponderance of the evidence.

Affirmed.