Sylvia WOODS *v.* Jerry A. WOODS, Welby
Larry WOODS, Terry Wade Woods and
Lois F. HUTCHISON

76-73                              543 S.W. 2d 952

Opinion delivered December 20, 1976
(Division I)

*Johnson, Calhoon & Lewis, Ltd.,* by: *Fletcher C. Lewis,* for appellant.

*Joe N. Peacock,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant was the widow of Welby Earl Woods who was also survived by appellees Jerry A. Woods, Welby Larry Woods, Terry Wade Woods and Lois F. Hutchinson, children of a previous marriage. He left a testamentary document which was admitted to probate as his last will and testament. This will was executed April 2, 1968, prior to appellant's marriage to the testator. His four children were the only devisees and legatees. After her husband died, appellant executed an agreement which provided, in substance, that she relinquished her right of dower and homestead, acknowledged that she was not entitled to any interest in the farming operation conducted by appellee Jerry Woods, and received certain real property and an equal share with each of appellees in other property of her deceased husband. This appeal was taken from a decree of the chancery court refusing to cancel and void her agreement in a suit brought by her seeking that relief. We find no reversible error and affirm.

Appellant first contends that the chancery court was without jurisdiction in the matter, because the probate court

was vested with exclusive jurisdiction by virtue of Ark. Stat. Ann. § 62-3201 et seq (Supp. 1975). Appellant says that under the terms of this section she was a "beneficiary" because she was entitled to take an interest in her husband's real and personal property by intestate succession. She further contends that the agreement into which she entered was a "disclaimer" as defined by the statute, i.e., a written instrument which unequivocally declines, refuses, releases or renounces an interest which would otherwise be received by her (as a beneficiary) signed, witnessed and acknowledged by her in the manner required by the statute.

The agreement involved was a written instrument signed by the parties in which it was agreed that it was the intention of all parties that the wishes of Welby Earl Woods be carried out; that appellant have the use of the home of decedent and his real property as long as she lived in the home; that Jerry A. Woods should pay to her one-fourth of the real property rent as long as appellant lived on the property and remained unmarried; that appellant should release and relinquish all right of dower and homestead or statutory allowance in the property of her husband and would not contest his will; and that the residue of his estate, after payment of his debts and expenses, should be equally divided among the parties to the agreement (i.e., appellant and appellees). The agreement contained a statement that the decedent had no interest in the farming operations of Jerry A. Woods and that decedent had relinquished any interest he may have had in farming machinery, equipment and the farming operation on January 1, 1968.

The sections of the act (Act 457 of 1973) relied upon by appellant are Ark. Stat. Ann. §§ 62-3201, 3203 (Supp. 1975) which read:

62-3201. Disclaimer of property and property interests - Definitions. As used in this Act [§§ 62-3201 - 63-3212], these terms shall have the following meanings ascribed to them:

(a) Beneficiary. The term "beneficiary" shall mean and include any person entitled (but for a disclaimer) to take an interest by intestate succession; by devise; by legacy or bequest; by succession to a disclaimed interest by

Will, intestate succession, or through the exercise or nonexercise of the testamentary power of appointment, by virtue of a renunciation and election to take against a Will; as beneficiary of a testamentary trust; pursuant to the exercise or non-exercise of a testamentary power of appointment; as donee of a power of appointment created by a testamentary instrument; or in any other manner under a testamentary interest.

(b) Interest. The term "interest" shall mean and include the whole of any property, real or personal, legal or equitable, or any fractional part thereof, share or particular portion or specific assets thereof, or any estate in any such property or power to appoint, consume, apply or expend property, or any other right, power, privilege, or immunity relating thereto.

(c) Disclaimer. The term "disclaimer" shall mean a written instrument which unequivocally declines, refuses, releases or renounces an interest which would otherwise be received by a beneficiary, and which defines the nature and extent of the interest disclaimed, and which must be signed, witnessed and acknowledged by the beneficiary in the manner hereinafter provided.

62-3203. Filing and notice. - (a) A disclaimer shall become effective when filed in the Probate Court for the county in which the estate of the person by whom the interest was created, or from whom it would have been received, is, or has been administered, or, if not Probate administration has been commenced, then in the Probate Court of the county in which the decedent was a resident at the date of his death.

(b) A copy of the disclaimer shall be delivered or mailed to the representative, trustee, or other person having legal title to, or possession of, the property in which the interest disclaimed exists, and no such representative, trustee or person shall be liable for any distribution or other disposition otherwise proper and which was made without actual notice of the disclaimer.

Appellant argues that the provision that a disclaimer shall become effective when filed in the probate court vests

that court with exclusive jurisdiction in regard to matters concerning the validity of a disclaimer under the act. But we find nothing in the act, or in the words appellant relies upon which suggests to us that the General Assembly intended to vest in the probate court any jurisdiction, either exclusive or concurrent, to cancel an instrument. On the other hand, cancellation of instruments for fraud or undue influence in their procurement (as alleged here) has always been a matter for the exercise of chancery jurisdiction, perhaps exclusively. Furthermore, appellant herself invoked the jurisdiction of the chancery court, seeking relief which that court had the power to grant, so she is in no position to complain.[1]

Appellant next contends that the chancery court erred in not invalidating the agreement for the reason that it was not filed with the probate court in the time and manner prescribed by Ark. Stat. Ann. §§ 62-3202, 3203 (Supp. 1975) and was not filed before a written waiver of the right to disclaim and a conveyance of property was entered into by appellant. Section 62-3202 requires that a disclaimer be filed after the creation of the interest disclaimed but within nine months after the date of death of the person from whom it would have been received. As will appear above, the disclaimer becomes effective upon its filing in the proper court. It is not shown that the instrument executed by appellant was filed in the probate court within nine months of her husband's death. Appellant says that it is ineffective for that reason. Although the agreement may contain a disclaimer and might fall into that category for the basic purposes of the statute in question, it is more extensive, because there is an agreement among the widow and heirs of the decedent governing the distribution of his estate and eliminating a potential contest of the will. It seems clear to us that our statute governing disclaimers was never intended to supersede the common law family settlement agreement. To accomplish that purpose, the intention to do so must have been manifestly clear from the words of the act itself. It was not.

A disclaimer may be accomplished by means other than that prescribed by the act in question, because it clearly

---

[1] In this respect this case differs from *Hilburn v. First State Bank*, 259 Ark. 569, 535 S.W. 2d 810, in that the court in which appellant here sought relief was not without power to grant the relief sought.

provides that it does not abridge the right of any person, apart from its terms, under any existing or future statute or rule of law, to disclaim any interest, or to assign, convey, replace, renounce or otherwise dispose of any interest. Furthermore, the language of § 62-3202 (a), which states that a beneficiary may disclaim an interest in the manner provided in the act, does not indicate that a disclaimer may be accomplished *only* in the manner provided in the act. There was clearly no legislative intention to make this method of disclaimer exclusive. We simply cannot find any intention to render ineffective a family settlement agreement which is not in compliance with the act in question.

Appellant also argues that her agreement was invalidated by her filing a written waiver of her right to disclaim and by her entering into a contract for the sale of an undivided one-hundreth interest in a 40-acre tract of land and in all personal property that she had a claim or title to, or right in, under the homestead statute, statute for widow's allowance, or statute allowing a taking against the will. No consideration was paid, but the purchaser agreed to pay the value arrived at by an independent appraiser. She relies on Ark. Stat. Ann. § 62-3206 which provides that a contract to convey real property or contract to assign or transfer personal property or a written waiver of the beneficiary's right to disclaim before the expiration of the period in which a beneficiary may lawfully disclaim shall bar the right to disclaim with respect to that property or interest. Of course, we find nothing to indicate that the statutory provisions relating to contracts are designed to protect anyone other than the purchaser, who is not a party to this action. The provision does nothing more than bar the withdrawal of a waiver. The statute does not, as appellant seems to indicate, relate to the filing of a disclaimer. It does operate to bar disclaimer following a waiver executed before the expiration of the period in which a beneficiary may lawfully disclaim. Regardless of the effect of the act, the subsequent acts of appellant could not invalidate a properly executed family settlement agreement.

Appellant somehow concludes that her agreement with appellees on the day after the decedent's funeral to equally divide $14,000, which was buried in a jar, among the five is invalid because of a conflict with the statute. She argues that

the $14,000 should become a part of her husband's estate because the division was a transfer prior to the expiration of the period during which a beneficiary may disclaim. We are unable to follow this reasoning, because it appears to us that the agreement would be protected against a disclaimer by appellant. Whatever the effect may be, we find the act to be without effect on the transactions between appellant and appellees.

Appellant finally argues that appellees used undue influence to induce her to enter into the agreement and breached a confidential and fiduciary relationship with her, knowing full well that she was unaware and uninformed of her legal rights and the extent of her husband's estate. The chancellor held that the preponderance of the evidence favored the finding that there was no fraud or imposition or overreaching by misplaced confidence practiced upon appellant either in the verbal agreement between the parties on June 14, when it was partially consummated, or on June 19, when it was reduced to writing. We are unable to say that the findings of the chancellor were clearly against the preponderance of the evidence, in spite of the fact that appellees elected to avail themselves of the services of the scrivener of the agreement as a trial advocate rather than as a witness, although it seems that he might have shed considerable light on the transaction. The chancellor did modify the agreement to enable appellant to receive her share of the profits from her husband's lands, without living on it and without remaining unmarried, on the ground of mutual mistake in including these requirements in the agreement.

The relationship between appellant and her stepchildren was something less than cordial. It was highly unlikely that they could unduly influence her actions or that she suddenly had a confidence in them which had not previously existed. Her own daughter stated that she did not have a good relationship with them. This daughter came and stayed with her mother at least part of every day and sometimes at night after her stepfather's death, and was present when her mother left home to go sign the agreement. She said that her mother was very nervous at the time and had not slept for several weeks. When this daughter suggested to appellant that someone accompany her when she went to sign the agreement, the mother declined, saying that they had agreed

and that she would rather not have the witness or any of her brothers interfere.

Appellant's husband died on June 12, 1974. Appellant testified that he was buried on a Friday and that appellee Terry Wade Woods and his wife stayed with her right after her husband's death until the Saturday after the funeral. On Friday morning (June 14), prior to the funeral, but after the parties had paid the bill, she and appellees dug up $14,000 which had been buried near the corner of a shop building. This was split five ways so that appellant and each of the appellees received an equal share. She testified that when she signed the agreement she was unable to read, was upset, and was ignorant of the meaning of the terms "dower," "homestead" and "statutory allowance" contained in the agreement. She says, without explanation, that she thought she had to do what appellees told her to do and that they told her not to bring anyone with her when the agreement was signed at the office of the lawyer who drew it. Prior to the trip to the lawyer's office, she said there had been a conversation at her home among all the parties to the agreement, during which there was a division of money and a payment by one of the sons of $100 to each of the others, including her, for a Honda and another took her husband's guns. She said appellees agreed that she should have "a lifetime dowry," which is what she said her husband had said that she should have and that he had advised her to get a lawyer if appellees didn't give it to her. She said she thought they were trying to be nice to her.

Appellant testified that after the agreement was signed she began having problems with the son who was farming the Woods land, and decided to contest the agreement when these problems arose; but that these problems were not the reason she made the decision. She said that she had been to a few lawyers during her lifetime, and that she had, on one occasion had one personal injury suit and another of some type. She disliked lawsuits. She talked to no lawyer prior to or at the time of the signing of the agreement other than the one who drew it. She had been aware of the existence of her husband's will since 1968, and recalled her husband reading some of it to her subsequent to 1968.

Appellee Jerry Woods was appointed administrator. He testified that he saw appellant every day for several days after his father's death and that she appeared to be normal and did not appear to be upset at any time. He said that after the funeral the whole family went "home" and discussed settlement of his father's estate for more than two hours and arrived at the terms of the agreement. A part of the agreement was that appellees' present attorney would prepare the document. This was signed at the attorney's office on June 19, 1974. Jerry Woods said that all the family was present and that they related the terms of the agreement to the lawyer, who caused it to be typed by his secretary and gave each one a copy. He stated that each of them read it and that the attorney either read or stated appellant's rights to her. According to him, he did not know what her rights were until the parties were in the lawyer's office. He recalled appellant's saying that she knew that she was entitled to "possibly a third or a half," at least, he said, more than she would get under the agreement.

Appellee Larry Woods testified that he suggested the lawyer's name and, when he asked her if it would be satisfactory for him to prepare the agreement, she answered in the affirmative and said that this lawyer had helped her in a lawsuit. It was his recollection that appellant said that she could have gotten one-third of everything when she expressed her satisfaction just outside the lawyer's office as she was leaving it. He also believed that the lawyer told her what her rights would be. He was sure that the words "dower," "homestead," and "statutory allowances" were mentioned. He corroborated Jerry's testimony about the agreement at the informal family gathering before the written agreement was prepared.

Terry Woods testified that the family meeting to work things out was suggested by appellant. He thought that the lawyer told appellant that she was entitled to one-third. He said that, as she was coming out of the lawyer's office, she expressed her satisfaction with the agreement and that he heard of no problems until three or four months later.

All the appellees who testified said that appellant did not appear to be upset at the time of the discussion when the

terms of the agreement were arrived at or at the lawyer's office when it was formalized and signed. It should also be noted that appellees contended that the buried money had been given to them by their father and that appellant was entitled to no part of it. Although we think their proof of gift failed, it is clear that their position could easily have caused litigation.

We deem no further recitation of testimony to be necessary. Comparison of the facts with those in other cases would be of little value. So much depended upon the credibility of the witnesses that we must defer to the judgment of the chancellor on that score. When we do, we cannot say that his findings were clearly against the preponderance of the evidence, which we would have to do to reverse the decree.

Appellant also argues that the chancellor erred in excluding the inventory filed by Jerry Woods, as administrator. The Chancellor refused to admit it, finding that it was not in conflict with the testimony of the witness. We find no reversible error on this point.

The decree is affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ.