Ruth I. JONES *v.* Gary BALENTINE, Individually and as
Administrator of the Estate of Otto Everett Balentine,
Deceased; Larry Balentine; and Inez Balentine

CA 93-30 866 S.W.2d 829

Court of Appeals of Arkansas
Division II
Opinion delivered November 24, 1993

*Skokos & Coleman, P.A.*, by: *Randy Coleman*, for appellant.

*Henry Hodges*, for appellees Gary Balentine, individually; Larry Balentine; and Inez Balentine.

*Wright, Lindsey & Jennings*, for appellee Gary Balentine as Administrator of the Estate of Otto Everett Balentine.

JOHN B. ROBBINS, Judge. Appellant, Ruth Jones, has appealed from the Pulaski County Probate and Chancery Courts' decision (in two consolidated actions) affirming the validity of a purported family settlement agreement into which appellant entered with her nephews, appellees Larry Balentine and Gary Balentine, and their mother, appellee Inez Balentine, the widow of appellant's predeceased brother, Roscoe Balentine, who died in 1990. The family settlement agreement at issue purported to settle the estate of appellant's brother, Otto Balentine, who died intestate on April 26, 1991. Appellant has also appealed from the denial of her petition to remove Gary as administrator of Otto's estate. Appellant is a resident of Baltimore, Maryland, and appellees live in North Little Rock. The parties met with an attorney, Richard Hatfield, in May 1991 and signed an agreement later that day which equally distributed Otto's estate among appellant and appellees. Without this agreement, Inez would not have been entitled to a share of Otto's estate.

The next day, the administration of Otto's estate was opened in the Pulaski County Probate Court, and waivers of inventory, accounting, and notice signed by appellant were filed. An order appointing Gary as administrator of the estate was entered, and letters of administration were issued to him. A week later, Gary made a partial distribution of $340,000.00 in cash without first obtaining the probate court's approval. In this partial distribution, each party received $85,000.00.

In June 1991, appellant revoked her waivers. She unsuccess-

fully sought to rescind the agreement and refused to sign some quitclaim deeds in connection with the agreement. In August 1991, appellant filed a petition to remove Gary as administrator, citing the unapproved partial distribution of $340,000.00. In response, Gary admitted that he had not petitioned the probate court for approval but stated that he had relied upon the family settlement agreement in making the partial distribution. Attached to his response was a copy of the family settlement agreement, which stated:

Agreement made by and between Inez Balentine, Ruth Jones, Gary Balentine and Larry Balentine.

1. Otto Balentine died on April 26, 1991, leaving the following property which we, as the persons who are entitled to the property, agree to distribute as follows.

| Property | Recipient |
|---|---|
| House located at 1410 Willow Street | Inez Balentine |
| All stock and ownership in Tac-A-Taco | Inez Balentine |
| 1979 Lincoln | Inez Balentine |
| 1973 Ford LTD | Inez Balentine |
| House and lot located at 1412 Willow Ave. | 1/4 each |
| Cash including C.D.s and checking owning approximately $363,000, less payment of administration expenses and debts | 1/4 each |
| Building and lot located at 1720 W. Long 17th Street, No. Little Rock | Split 1/4 each, after Veva Brant ceases to occupy it in accordance with the contract with her |

| | |
|---|---|
| 4 lots in Pinecrest Cemetery | 1/3 each to Ruth Jones, Gary Balentine and Larry Balentine |
| Personal Property | Distributed by agreement. |

2. We shall equally divide all expenses and debts to be paid from the checking account.

In August 1991, appellant filed a complaint against Gary, individually and as administrator of the estate, Larry, and Inez, in the Pulaski County Chancery Court to rescind the agreement on the grounds of undue influence and appellees' breach of their confidential and fiduciary relationships with appellant. Later, Gary filed an inventory listing the value of the personal property at $369,616.00 and the real property at $59,500.00 as of the date of the decedent's death. Gary also filed a petition for authority to reimburse Inez for expenses of the estate which she had paid. These expenses included insurance, utilities, maintenance, and repair bills for the real property. The probate court granted reimbursement to Inez in the amount of $5,415.95 in August 1992.

The cases were consolidated for trial. In her proposed findings of fact, appellant asked the chancery court to grant her oral motion to amend the pleadings to conform to the evidence to include the issues of lack of consideration; failure to include an interested, non-consenting, and necessary person (appellant's spouse) in the agreement; and mutual mistake of fact. Appellant also requested that the court find the purported family settlement agreement to be an executory contract requiring consideration. The court upheld the family settlement agreement and found that, pursuant to this agreement, the proper people had received the money and, therefore, the distribution was not grounds for Gary's removal as administrator. The trial judge stated that, although Gary may not have done everything he should have done to keep the estate's assets properly maintained, he had relied upon his mother to maintain the estate's assets. In her conclusions of law, she held that Gary's actions as administrator did not rise to the level of malfeasance or mismanagement, as required by Ark. Code Ann. § 28-48-105 (1987), to justify his removal.

In her findings of fact and conclusions of law, the chancellor found that, as Otto's surviving sibling, under the Arkansas law of descent and distribution, appellant would have been legally entitled to an undivided one-half interest in his estate; Otto's nephews, Larry and Gary, would have been each entitled to an undivided one-fourth interest. As widow of the decedent's brother, Inez would have been entitled to no interest in the estate.

The chancellor also found that no confidential relationship existed between appellant and appellees. She noted that appellant had not seen appellees for several years before Otto's death. She also found that appellant had threatened to engage in litigation with her brothers in the past; she had no close relationship with her nephews; and she had only a slightly closer relationship with Inez. The chancellor further found that Gary had no fiduciary duty to appellant at the time the agreement was executed because he had not yet been appointed personal representative of the estate. Additionally, the chancellor found no evidence of undue influence on the part of appellees. She found that appellant was competent, could act for herself, and could protect her own interests in legal transactions. She found that appellant did not appear to be unduly upset and was not so incapacitated by her grief that she was unable to make a rational decision about the agreement. The chancellor found that, although appellees had a better understanding of Otto's assets, there was no evidence that they made any misrepresentations to appellant and that she was fully informed of the estate's assets. The chancellor found that Mr. Hatfield had informed appellant and appellees of their legal rights under Arkansas law and advised each of them that they were entitled to have separate counsel before entering into the agreement.

The chancellor also found appellees' and Mr. Hatfield's testimony to be truthful. With regard to appellant's veracity, however, she stated:

17. The Court is not convinced that Ms. Jones is a totally truthful witness and feels she is not an accurate witness. The most that the Court can give her is that Mr. Hatfield said and explained certain things to her which she didn't catch. Parts of her testimony lead the Court to believe she doesn't always tell the complete truth on the first ques-

tion. While not characterizing or trying to brand the Plaintiff as a liar, the Court does not credit all of her testimony and believes she testifies in ways that put a more favorable light on circumstances than an objective viewer would give them. The Court does not see all the situations she described in precisely the same light as she does.

In her conclusions of law, the chancellor expressed the general principle that family settlement agreements are favored in the law and will not be set aside except for very strong and cogent reasons and that only nominal consideration is required to support such agreements.

In her first point on appeal, appellant argues that the agreement is void for lack of consideration; she argues that the rules of law applicable to family settlement agreements do not apply here because this is not a "family" settlement agreement. Appellant argues that, because Inez was not an heir and had no legal interest in Otto's estate under the Arkansas laws of descent and distribution, Inez was an "outsider" to the estate. Appellant cites 15A C.J.S. *Compromise and Settlement* § 9, at 201 (1967), which states: "The doctrine that the settlement of family disputes affords sufficient consideration for a compromise applies only between parties in interest, and will not sustain an agreement between a party in interest and an outsider not to create trouble in the family." Appellant argues that the Arkansas cases dealing with family settlements uniformly involve agreements among heirs-at-law, widows, devisees, parents, siblings, children, and pretermitted children; she argues that Inez, the widowed sister-in-law of Otto, is not an interested party in his estate and is, therefore, an "outsider." According to appellant, Inez's status as an "outsider" prevents this agreement from being characterized as a family settlement agreement and, therefore, the usual requirement of consideration is necessary.

We note that appellant has cited no Arkansas case which holds that *all* parties to a family settlement agreement must be legally interested in the decedent's estate. It is true that most of the cases cited by appellant do involve heirs, spouses, and distributees. However, *Pfaff* v. *Clements*, 213 Ark. 852, 213 S.W.2d 356 (1948), and *Turner* v. *Davis*, 41 Ark. 270 (1883), lend support to appellees' position. In *Pfaff*, the Arkansas Supreme

Court quoted *Turner* v. *Davis* and reversed the Pulaski County Chancery Court's decision allowing some of the parties to a family settlement agreement to repudiate that agreement. In 1946, Samuel Ernest Pfaff died intestate survived by a son, Terrence Pfaff; a daughter, Justine Pfaff Petre; and two grandchildren, Carel Heizman Clements and Carl E. Heizman II, who were the only children of Ernestine Pfaff Heizman, a daughter of Samuel Ernest Pfaff who had predeceased her father. Terrence Pfaff was appointed administrator of his father's estate but died before the administration was complete. He was survived by his wife, Anna Mae Pfaff; his sister, Justine Petre; his niece, Carel Heizman Clements; and his nephew, Carl Heizman II. The estate of Terrence Pfaff apparently consisted, at least in part, of his share of the estate of Samuel Ernest Pfaff. Mrs. Petre, Mrs. Clements, and Carl Heizman signed and delivered to Anna Mae Pfaff an agreement giving the share of Samuel Ernest Pfaff's estate which Terrence would have received to Anna Mae Pfaff. Later, the sister, niece, and nephew of Terrence decided to repudiate the agreement. Although Anna Mae Pfaff claimed they had a valid family settlement agreement, the chancery court allowed the other parties to repudiate the agreement. On appeal, the supreme court reversed and discussed at length the many Arkansas cases dealing with family settlements. The court noted that these cases contain a "common refrain" that family settlements are favored and should be encouraged where no fraud or imposition was practiced. 213 Ark. at 855, 213 S.W.2d at 358. The court stated:

> A study of our cases, and also those from other jurisdictions, fails to disclose any definition, or any statement listing all of the essential ingredients of a family settlement. Notwithstanding such absence, there are, however, some matters that are clear; and these are sufficient for a decision in the case at bar:

> 1. It is not necessary that there be a previous dispute or controversy between the members of the family before a valid family settlement may be made. Thus, in *Martin* v. *Martin*, [98 Ark. 93, 135 S.W. 348 (1911),] there was no dispute at the time of the conveyance or will in question, yet the agreement was called a "family settlement"; and Mr. Justice FRAUENTHAL, speaking for the court, used this language:

"This was in effect a family settlement of the interests of these members of the family in these two remaining tracts of land which came from these two estates of the family. Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced. The motive in such cases is to preserve the peace and harmony of families. The consideration of the transaction and the strict legal rights of the parties are not closely scrutinized in such settlements, but equity is anxious to encourage and enforce them. As is said in the case of *Pate* v. *Johnson*, 15 Ark. 275: 'Amicable and family settlements are to be encouraged, and when fairly made . . . strong reasons must exist to warrant interference on the part of a court of equity.' *Turner* v. *Davis*, 41 Ark. 270; *Mooney* v. *Rowland*, 64 Ark. 19, 40 S.W. 259; *LaCotts* v. *Quertermous*, 84 Ark. 610, 107 S.W. 167; *Smith* v. *Smith*, 36 Ga. 184, 91 Am. Dec. 761; *Smith* v. *Tanner*, 32 S.C. 259, 10 S.E. 1058; *Good Fellows* v. *Campbell*, 17 R.I. 402, 22 Atl. 307, 13 L.R.A. 601."

The case last cited in the above quotation is that of *Good Fellows* v. *Campbell*, 17 R.I. 403, 13 L.R.A. 601, wherein there had been no previous dispute, yet a family settlement was upheld; and the opinion contains this pertinent language:

"But there is a class of cases of family arrangements, relating to the settlement of property, in which there is no question of doubtful or disputed rights, and in regard to which a peculiar equity has been administered, in that they have been supported upon grounds which would hardly have been regarded as sufficient if the transaction had occurred between strangers. In these cases the motive of the arrangements was to preserve the honor or peace of families or the family property. When such a motive has appeared, the courts have not closely scrutinized the consideration.

213 Ark. at 855-56, 213 S.W.2d at 358.

██ With regard to the issue of consideration, the court stated:

(2) Likewise, it is not essential that the strict mutuality of obligation or the strict legal sufficiency of consideration — as required in ordinary contracts — be present in family settlements. It is sufficient that the members of the family want to settle the estate: one person may receive more or less than the law allows; one person may surrender property and receive no *quid pro quo*. Thus, in *Turner* v. *Davis*, 41 Ark. 270, there was claimed that one — Watkins — had no interest in the property sufficient to support a family settlement; but in disposing of that contention, Mr. Justice EAKIN said: "We cannot go behind the agreement to ascertain the interest of Watkins. It is a matter of no consequence whether he had courtesy [sic] or had nothing. . . . The agreement stands on the ground of family settlements,. . . They are supposed to be the result of mutual good will, and imply a disposition to concession for the purpose, regardless of strict legal rights; always excepting cases of fraud, of which nothing, in this case, appears."

. . . .

It is true that in some of our cases (a recent such case is *Mills* v. *Alexander*, 206 Ark. 754, 177 S.W.2d 406), we have mentioned the "consideration" or benefit received by the person who later sought to question the family settlement; but in each such case the consideration was discussed to demonstrate that there had been no fraud, imposition or overreaching practiced against the complaining party. In the case at bar there is no claim that there has been any such fraud, imposition or overreaching, so the matter of consideration becomes of no consequence in the family settlement here involved.

213 Ark. at 857-58, 213 S.W.2d at 359. *See also Harris* v. *Harris*, 236 Ark. 676, 370 S.W.2d 121 (1963), where the appellee unsuccessfully challenged the appellants' interest in the property as insufficient to support a family settlement agreement.

Additionally, in *Jackson* v. *Smith*, 226 Ark. 10, 287 S.W.2d 571 (1956), the supreme court affirmed the Johnson County Chancery Court's refusal to set aside a family settlement under

which the appellant had executed and delivered a deed to the appellees. That lawsuit involved the estate of James Poteet, who died intestate. James Poteet had four sisters, appellants Mrs. Collins, Mrs. Jackson, and two other sisters who had predeceased him, leaving children (appellee Mr. Bernice Smith and appellee Mrs. Luther Norvell). Mrs. Collins and her nephew, Bernice Smith, agreed that Mrs. Collins and Mrs. Jackson would convey to Bernice Smith and Luther Norvell all of their interest in the estate of Mr. Poteet; in return, Mr. Smith and Mr. Norvell would pay all of the debts of the estate. Later, Mrs. Jackson and Mr. Norvell also agreed to this arrangement, and a deed was signed and acknowledged. It should be noted that Mr. Norvell was not a legal heir of the decedent; he was simply a spouse of a living heir. Later, Mrs. Collins and Mrs. Jackson learned the value of the tract of land and sued to set the deed aside. On appeal, they argued that the deed was not within the "family settlement rule." The court disagreed and stated: "That the deed from Mrs. Collins and Mrs. Jackson to Mr. Smith and Mr. Norvell is within the 'family settlement rule' is too clear to admit of doubt. *Pfaff* v. *Clements*, 213 Ark. 852, 213 S.W.2d 356, is complete authority for such conclusion." 226 Ark. at 13, 287 S.W.2d at 573.

██ We conclude, therefore, that it is not necessary that all parties to a family settlement agreement must have an enforceable legal interest in an estate in order for the agreement to be enforceable as a family settlement agreement which requires little, if any, consideration. Here, Inez was the mother of the decedent's two nephews, each of whom was entitled to an undivided one-quarter interest in the estate. Additionally, three of the four parties to this agreement were heirs-at-law of the decedent. The chancellor did not err in concluding that this was a family settlement agreement.

██ Citing 31 Am. Jur. 2d *Executors and Administrators* § 67 (1989), appellant also argues that, even if the agreement *is* a family settlement agreement, it is still invalid because it is an executory contract. Appellant argues that executory family settlement agreements must be supported by consideration. Appellant contends that the cases of *Grubbs* v. *Mattson*, 268 Ark. 1144, 599 S.W.2d 148 (Ark. App. 1980), and *Trantham* v. *Trantham*, 221 Ark. 177, 252 S.W.2d 401 (1952), support this argument. Both of these cases are distinguishable. There is no reference in

either case to the agreement involved therein as a "family set-
tlement agreement." Additionally, the agreements at issue in those
cases were made before the death of the family member whose
estate was involved. In the case at bar, the chancellor held that,
in Arkansas, even *executory* family settlement agreements are
not subject to the general requirement of consideration. In addi-
tion to *Pfaff* v. *Clements*, executory family settlement agreements
were upheld as valid in the following cases: *Isgrig* v. *Thomas*, 219
Ark. 167, 240 S.W.2d 870 (1951); *Barnett* v. *Barnett*, 199 Ark.
754, 135 S.W.2d 828 (1940); and *Davis* v. *Davis*, 171 Ark. 168,
283 S.W. 360 (1926).

■ Appellant also argues that the agreement is invalid
because appellant's husband was not a party to it. She asserts
that her husband had acquired a curtesy interest, as her spouse,
in the real estate controlled by this agreement. Appellant cites 31
Am. Jur. 2d *Executors and Administrators* § 56 (1989) as author-
ity for this argument:

> In the typical case all successors to an estate (includ-
> ing the surviving spouse, if any) are parties to a family
> settlement, and every successor whose rights may be affect-
> ed adversely should be made a formal party to it.

> If a written settlement makes all successors parties to
> it, and it is contemplated that all shall sign it, but one does
> not, the contract is not binding even on those who have
> signed. But otherwise, whether a particular successor is a
> necessary party depends upon the circumstances. One is
> not a necessary party to a settlement which does not impair
> or affect his rights, and such a settlement is valid as to
> those who are parties.

At 31 Am. Jur. 2d *Executors and Administrators* § 60, spouses
are addressed: "Where a party to a family settlement agrees to
transfer title to real estate, it is necessary that his or her spouse
sign the agreement or the subsequent deed, in order to waive
dower." The chancellor did not agree that Mr. Jones' failure to
join in the agreement rendered it invalid. She stated that Mr.
Jones' curtesy was only an inchoate interest and that appellant
was free to transfer by deed any interest in real property she
owned without his participation. She added, however, that, if

appellant were to die within seven years of the transfer, Mr. Jones might have a claim based on his curtesy interest. In *Mickle* v. *Mickle*, 253 Ark. 663, 488 S.W.2d 45 (1972), the supreme court said that a widow's right of dower in real property remains only an inchoate right and is not an estate until her husband's death; the right of dower is only a contingent expectancy during the lifetime of her husband. *Id.* at 668, 488 S.W.2d at 48. The chancellor was correct in her determination of this issue.

In her second point on appeal, appellant argues that the chancellor erred in failing to find that the agreement was obtained by undue influence and that appellees had breached their confidential relationship with her. She also argues that Gary breached his fiduciary duty as administrator to her. The chancellor found that Gary and Inez had informed appellant that she would be entitled to one-half of Otto's estate and that Gary and Larry would receive one-fourth of that estate. She further found that Mr. Hatfield had advised appellant about each of the parties' rights under the laws of descent and distribution in Arkansas and told each of them that they were entitled to have separate counsel. In finding that no confidential relationship existed between appellant and appellees, the chancellor noted appellant's lack of a close relationship with them and with her brothers. The chancellor further found that Gary had no fiduciary duty to appellant at the time the agreement was executed because he had not yet been appointed administrator of the estate. She found appellant to be competent, able to protect her own interests, and not so incapacitated by grief over her brother's death that she was unable to make a rational decision about the agreement. The chancellor also found Mr. Hatfield's past association with Inez to be insubstantial. She went on to find that she believed appellees and Mr. Hatfield were telling the truth and that she was not convinced that appellant was a totally truthful witness. The evidence more than amply supports these findings.

Ordinarily, the burden is upon one who attacks such a transaction to prove that the donor was unduly influenced. *See Burns* v. *Lucich*, 6 Ark. App. 37, 47, 638 S.W.2d 263, 269 (1982). A different burden of proof arises when it is shown that a confidential relationship existed between the donor and a dominant donee. *Id.* Where special trust or confidence has been shown, the transfer to the dominant party is presumed to be void. *Id.* Relation-

ships deemed to be confidential are not limited to those involving legal control; they also arise whenever there is a relation of dependence or confidence, especially confidence which springs from affection on one side and a trust in reciprocal affection on the other. *Id.* at 48, 638 S.W.2d at 270. In addition to proving the existence of a confidential relationship, a party challenging such a transaction must also show that the donee occupied such a superior position of dominance or advantage as would imply a dominating influence over the donor. *Id.* at 49, 638 S.W.2d at 270. Each case must be determined on its own facts. *Donaldson* v. *Johnson*, 235 Ark. 348, 350-51, 359 S.W.2d 810, 812-13 (1962). Whether undue influence occurred is a question for the trier of fact. *Carpenter* v. *Horace Mann Life Ins. Co.*, 21 Ark. App. 112, 121-22, 730 S.W.2d 502, 507 (1987).

Although chancery cases are reviewed *de novo* on the record, this court does not reverse a decree unless the chancellor's findings are clearly against a preponderance of the evidence. *Burns* v. *Lucich*, 6 Ark. App. at 47, 638 S.W.2d at 269. Since this question turns heavily on the credibility of the witnesses, this court defers to the superior position of the chancellor in this regard. *Id.* The evidence in this case overwhelmingly supports the chancellor's finding that no confidential relationship existed between appellant and appellees. As in *Woods* v. *Woods*, 260 Ark. 789, 795, 543 S.W.2d 952, 955 (1976), appellees' relationship with appellant was such that "[i]t was highly unlikely that they could unduly influence her actions or that she suddenly had a confidence in them which had not previously existed." In view of the fact that the chancellor expressly discredited appellant's testimony, we hold that her findings that appellees had not exercised undue influence and had not breached a confidential relationship are not clearly erroneous. It is also clear that Gary had not yet been appointed administrator of Otto's estate when the agreement was signed and thus violated no fiduciary duty to appellant in signing it.

In her third point on appeal, appellant argues that the probate judge erred in refusing to remove Gary as the administrator of the estate. Appellant asserts that such removal was required by Ark. Code Ann. § 28-48-105 (1987), which states:

(a)(1) When the personal representative becomes mentally incompetent, disqualified, unsuitable, or incapable of discharging his trust, has mismanaged the estate, has failed to perform any duty imposed by law or by any lawful order of the court, or has ceased to be a resident of the state without filing the authorization of an agent to accept service as provided by § 28-48-101(b)(6), then the court may remove him.

*See also Morris* v. *Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991); *Cude* v. *Cude*, 286 Ark. 383, 691 S.W.2d 866 (1985); *Price* v. *Price*, 258 Ark. 363, 527 S.W.2d 322 (1975); *Davis* v. *Adams*, 231 Ark. 197, 328 S.W.2d 851 (1959). The probate judge found that, although Gary may not have done everything he should have done to keep the estate's assets properly maintained, he had relied upon his mother's assistance in maintaining them. She also found that, since the family settlement agreement was upheld, the proper people had received the $85,000.00 disbursements and that this partial distribution should not be grounds for Gary's removal as administrator. Although probate cases are reviewed *de novo* on the record, this court will not reverse the findings of the probate judge unless clearly erroneous, giving due deference to the probate judge's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *O'Flarity* v. *O'Flarity*, 42 Ark. App. 5, 12, 852 S.W.2d 150, 154 (1993).

 In her findings, the chancellor acknowledged that this partial distribution was without court approval as required by statute. She noted, however, that all parties had testified that they were willing and able to restore this cash if the court so ordered and that the right people had received the money. This finding by the chancellor is in line with the frequently applied rule of law that error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice, this court does not reverse. *Jones* v. *Jones*, 43 Ark. App. 7, 13, 858 S.W.2d 130, 134 (1993). The evidence shows that Inez used her own money to maintain the real property of the estate and that, following the denial of the petition to remove him as administrator, Gary requested and received the probate court's permission to reimburse his mother for these expenses. Although appellant argues that an administrator is not permitted to delegate his responsibilities to

other individuals, there is nothing in the probate code which denies the administrator the authority to engage the assistance of others in meeting his responsibilities. Also, no creditors made claims against the money which was distributed.

The decision is affirmed in all respects.

JENNINGS, C.J., and MAYFIELD, J., agree.