SANDEFER *v.* SANDEFER.

4-9683 245 S. W. 2d 568

Opinion delivered February 4, 1952.

944

 

*Collins, Garner & Collins,* for appellant.

*Gordon B. Carlton,* for appellee.

HOLT, J. Appellee is the widow of J. W. Sandefer, who died August 1, 1950, and appellant was his brother. Mrs. Sandefer brought this action against appellant to cancel and set aside a deed to sixty acres of land in Sevier County. She alleged, in effect, that she purchased the property (consisting of a twenty acre tract and a forty acre tract) December 6, 1943, that appellant, a few days after her husband's death "told her he wanted to make a deal with her for a part of her lands, the 37½ acre tract and the 2½ acre tract. At that time and continuously since that time plaintiff has been very nervous, is in poor health and practically helpless and the defendant was well aware of these facts. But despite this, the defendant falsely and fraudulently represented to the plaintiff that if she would deed him the forty acres described herein, he would pay her ten dollars cash per acre for said lands and would pay all her living expenses for the remainder of her lifetime and pay her burial expenses when she died;" that by fraud, misrepresentations and undue influence, she was induced to execute the deed in question which she later learned called for sixty acres instead of forty acres as she thought. She further alleged that appellant refused to carry out his agreement with her and prayed that the deed be cancelled and title to the sixty acres quieted in her.

Appellant answered with a general denial and "further alleged that in October, 1943, J. W. Sandefer and appellant entered into an oral agreement whereby appellant would furnish the purchase price of certain lands and farm animals and J. W. agreed to hold same in the name of, and for the use of, appellant; appellant actually

furnished $1,000 pursuant to said agreement; J. W. furnished $300 of his own money and purchased the lands described in the complaint; 9 head of cattle and 4 horses went with the lands; J. W. fraudulently and falsely required the lands to be conveyed as an attempted estate by the entirety," that J. W. Sandefer's actions gave rise to a resulting trust in appellant's favor and prayed that appellee's complaint be dismissed and title quieted in him, or in the alternative, that he have judgment for damages and betterments.

Trial resulted in a decree for appellee, which contained this recital: "There was never any agreement or contract as to the twenty acre tract * * * that tract was included in said deed through the unlawful design of the defendant and for the fraudulent purpose of obtaining title to all of the lands from plaintiff without consideration. That the defendant was guilty of fraud and misrepresentation in obtaining the deed for the lands or for any part thereof, and the court finds that he has paid to plaintiff no consideration, and intends paying nothing for said land, and now repudiates the contract so made and entered into with plaintiff in so far as the payment for said land is concerned.

"The court further finds that the deed should be cancelled and held for naught for lack of consideration paid and because of fraud practiced by defendant on the plaintiff in the obtaining of said deed."

This appeal followed.

—(1)—

Appellant first strenuously contends that appellee has failed to sustain the burden imposed on her to show by clear, cogent and convincing evidence that fraud or undue influence was used by appellant in procuring the deed in question from her. We cannot agree.

Most of the testimony appears to be in irreconcilable conflict. On behalf of appellee, it was shown that in early 1943, she and her husband went to Port Arthur, Texas, where he worked in a munition plant and earned

approximately $2,400 before they returned to Sevier County in October, 1943, that while in Port Arthur, appellee also earned $7.00 per week. It is undisputed that they deposited $1,900 in a bank in Horatio immediately following their return and gave a check on this account for $1,300 for the purchase price of certain livestock and the sixty acre farm here involved. Appellant was not known in this transaction and Mr. Brinkley, who sold the land to appellee, did not know appellant. Appellee further testified that none of appellant's money went into the purchase or was sent to them for any purpose, that there had been no correspondence between appellant and her husband during the twenty years prior to appellant's return to Sevier County from California in 1948, about five years after the purchase of the tract of land, that appellant made no claim of any interest in the property until shortly after her husband's death, August 1, 1950. She further testified that after her husband's death appellant came to see her and offered to buy forty acres of the property for $10 an acre and in addition provide her a home and living expenses as long as she lived, that she signed the deed, went home, and later asked appellant for the purchase money and he refused to pay her anything and said to her "to hell with you, I ain't going to give you nothing." He never furnished groceries, or living expenses.

Witness, Griffin, testified that about three weeks after J. W. Sandefer died, appellant told him that "he was hardly able to but thought he would buy it (the property from the widow, appellee) if he could make the arrangements," and that appellant made no claim to any interest in the land.

Appellant testified that he sent a check for $1,000 to his brother in Port Arthur with the understanding and agreement that J. W. Sandefer was to purchase a farm in the name of, and for the use of, appellant. Appellant did not produce the cancelled check for $1,000, or any record or evidence from the California bank to show that any charge had been made against his account in this amount, nor did he produce any letter or correspondence

from his brother during his twenty years' absence from Arkansas. Appellant admitted that he had not seen his brother or appellee for twenty years until he came to Arkansas in 1948, five years after the land in question was purchased and deed delivered to appellee. His excuse was that the check and all correspondence had been lost in a fire. It further appears that he made no inquiry whatever at any time after he claimed to have sent the check to his brother, about any farm purchase, or as to expense, upkeep, taxes, etc., that might have accrued.

There was testimony for appellant, of a corroborative nature, that his brother admitted in the presence of a "welfare woman" that appellant had an interest in the property and witness, Sam Barrick, testified that he was present when J. W. Sandefer was talking to the "welfare woman" and "heard J. W. Sandefer admit that appellant had $1,000 in the place."

There was other evidence tending to corroborate appellee's testimony, but we do not attempt to summarize more. It suffices to say that when all of the testimony is considered, we are unable to say that it does not support the Chancellor's finding that appellee had met the burden imposed on her and the test required.

As we said in the recent case of *Gerlach* v. *Cooper*, 217 Ark. 596, 232 S. W. 2d 458, "the test in an effort to set aside a deed for fraud in its execution is whether there is 'a preponderance of the evidence which is clear and convincing.'"

—(2)—

What we have said above applies with equal force to appellant's contention that a resulting trust arose from J. W. Sandefer's actions. To support this claim, the evidence also must be clear, cogent and convincing.

In *Nelson* v. *Wood*, 199 Ark. 1019, 137 S. W. 2d 929, we said: "The general rule, as well as the established rule in this state, seems to be well settled that in order for one to establish by parol either a resulting or constructive trust, the evidence must be 'full, clear and convincing,' 'full, clear and conclusive,' 'of so positive a

character as to leave no doubt of the fact,' and 'of such clearness and certainty of purpose as to leave no well founded doubt upon the subject.' These requirements run through a long line of cases from this court." *Tillar v. Henry*, 75 Ark. 446, 88 S. W. 573; *Crittenden* v. *Woodruff*, 11 Ark. 82; *Trapnall's Administratrix* v. *Brown*, 19 Ark. 39; *Johnson* v. *Richardson*, 44 Ark. 365; *Richardson* v. *Taylor*, 45 Ark. 472; *Robinson* v. *Robinson*, 45 Ark. 481; *Crow* v. *Watkins*, 48 Ark. 169, 2 S. W. 659; *Camden* v. *Bennett*, 64 Ark. 155, 41 S. W. 854; 1 Perry on Trusts, § 137.

We think appellant has failed to meet the burden imposed.

—(3)—

On the record presented, appellant was not entitled to damages or betterments for the reason that his alleged purchase from appellee was fraudulent and in bad faith as the trial court found.

We said in *Reeder* v. *Meredith*, 78 Ark. 111, 93 S. W. 555: "If appellant's purchase was in bad faith, as the court's findings show and the proof warrants, he would not be entitled to any compensation for improvements."

Accordingly, the decree is affirmed.