Eva GRUBBS *v.* Dorothy MATTSON

CA 79-343                                       599 S.W. 2d 148

Court of Appeals of Arkansas
Opinion delivered April 30, 1980
Released for publication May 21, 1980

*Griffin Smith,* for appellant.

*Herrod & Cole,* by: *E. H. Herrod,* for appellee.

MARIAN F. PENIX, Judge. A lawsuit was brought by Appellant Eva Grubbs to cancel a deed executed by Addie Young (the parties' mother) to Appellee Dorothy Mattson conveying her home, reserving a life estate. It was alleged the

deed was executed as a result of fraud and undue influence by Appellee. Addie Young died September 20, 1977. The Chancellor held the deed valid. Eva Grubbs appeals.

The parties are sisters. Their mother, Addie Young, wrote a will in 1963 which left her propety to the parties equally. In December 1976 Addie Young visited Eva in Texas. Eva and her husband prepared a will which Addie signed December 23, 1976. The will was critical and derogatory towards Dorothy and expressed the intent to "never knowingly and in my right mind sign over, transfer or convey any real property, now or under any circumstances at a later date, to my older daughter Dorothy Young Mattson." Addie's daughter Dorothy moved to Arkansas a couple of years before Addie's death to care for her ailing mother, and did care for her until her death. Addie conveyed her home property by quitclaim deed to Dorothy on February 15, 1977. On September 13, 1977, at the insistence of Appellant Eva, Dorothy signed a paper agreeing to share 50-50 in any property owned by their mother. The Chancellor dismissed the complaint holding the deed to be valid and the September 13, 1977 contract to be invalid.

## I

Eva alleges the Chancellor's order referring to the December 23, 1976 document, admitted to probate, as a "purported will" amounted to a review of probate proceedings which was beyond equity jurisdiction.

The record shows the December 23, 1976 document was admitted to probate by Judge Jernigan. The uncontradicted testimony indicated the sisters shared all the personal property equally as provided in the will. There was no real property to be probated. It had been deeded to Dorothy February 15, 1977.

## II

Eva alleges the September 13, 1977 document which Dorothy signed agreeing to share their mother's estate equally was not the result of fraud.

The record reflects Eva prevailed upon Dorothy to sign the September 13 agreement by convincing Dorothy such action would ease the pressure Eva was under arising from marital problems. Eva convinced Dorothy the agreement would save her marriage, otherwise the death of her mother and a subsequent broken marriage would be more than she could handle. The record further reflects Eva convinced Dorothy the agreement would aid in pacifying Eva's husband in regard to the financial accounting which he expected from Eva each time she returned from visiting her dying mother.

The Chancellor found Dorothy had relied to her detriment on the statement of her sister regarding her marital situation and was induced to sign the contract because of such statements, therefore the contract was obtained through duress and fraud. We find the so-called contract to be a statement signed only by Dorothy. There was lack of consideration. Consideration is essential to the validity of every contract. *Catlin* v. *Horne,* 34 Ark. 169 (1879); *Trantham* v. *Trantham,* 221 Ark. 177, 252 S.W. 2d 401 (1952). The agreement cannot be said to be an enforceable contract, and this is not an action for specific performance.

### III

Eva contends the Chancellor's conclusion the deed was valid is unsupported by a preponderance of the evidence.

Dorothy testified her mother Addie talked to her about giving up her job and her own residence to come live with her mother and that her mother offered her her home. Dorothy testified she was unwilling to receive the home as long as her mother was alive. Beverly Harp, who notarized the deed, testified Addie was mentally alert. Rita Townsend, deceased's daughter-in-law, testified Addie had said the home was Dorothy's at Addie's death. Several others testified to Addie's mental state and expressed intention her home should be Dorothy's.

The issue was whether the deed should be cancelled on the ground it was obtained through fraud or undue influence. There was no testimony Dorothy exercised fraud or undue in-

fluence to induce her mother to execute the deed. Eva argues the deed should be cancelled on the basis of the declared intention of her mother in the second will not to convey the real estate to Dorothy. The non-testamentary statements in the will of the deceased regarding reputed actions of Dorothy and future possible actions of the testatrix did not preclude the deceased from later voluntarily executing the deed in question.

The burden is on Eva to show by clear and convincing proof the deed was procured by undue influence, duress, or fraud. From a review of the record we cannot say the Chancellor erred in holding Eva had not met her burden. *Gerlach v. Cooper,* 217 Ark. 596, 232 S.W. 2d 458 (1950); *Sandefer v. Sandefer,* 219 Ark. 943, 245 S.W. 2d 568 (1952); *Lawson v. Lawson,* 226 Ark. 643, 291 S.W. 2d 518 (1956); *Davidson v. Bell,* 247 Ark. 705, 447 S.W. 2d 338 (1969). We cannot say the Chancellor was in error in refusing to rescind the deed.

Affirmed.

HAYS, J., concurs.

STEELE HAYS, Judge, concurring. I agree with the result reached in this case for the reason that I can find no acceptable alternative within the frame-work of the law. I am, however, constrained to comment that I believe the decedent was prevailed upon by one daughter to convey to her the only significant asset of the estate, to the exclusion of the other daughter and that it was the abiding wish of the decedent that both of her children should share equally in her modest estate so that her memory not be marred by partiality. It is regrettable that the events themselves occurred and that we are unable to alter them on the basis of the record before us.