Johnny SCHERRER *v.* STATE of Arkansas

CR 87-71                                                    742 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered January 19, 1988

*James P. Clouette*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. This case was tried and appealed separately from the case of *Jimmy Scherrer* v. *State of Arkansas*, 294 Ark. 287, 742 S.W.2d 884 (1988), also decided today. Johnny Scherrer was found guilty of murder in the first degree. Because the jury could not agree upon a sentence, the trial judge sentenced him to life imprisonment pursuant to Ark. Stat. Ann. §§ 41-802 and 43-2306 (Repl. 1977). He argues ten points for reversal. We find no error and affirm the judgment of the trial court.

Debbie Watts was murdered in 1985. Terry Harrison, Scherrer's accomplice, and Billy Ivey, who witnessed the murder, offered the principal testimony at trial. Harrison testified that Scherrer, utilizing the name Jim Woods, called the victim's place of employment two days before the murder asking to speak with her. He also testified that Scherrer called the victim on the day of the murder and told her to meet him out near Dunklin's farm, which was near the crime scene. Ivey's and Harrison's testimony essentially established that Scherrer raped her, cut her throat, and then put her body in a nearby canal. Other witnesses placed Scherrer's automobile in the vicinity of the crime scene on the day of the murder.

## I. MOTION FOR DIRECTED VERDICT

Scherrer first argues that the trial court erred in refusing to grant his motion for a directed verdict since the state failed to corroborate the accomplice testimony of Ivey and Harrison. Ark. Stat. Ann. § 43-2116 (Repl. 1977) provides in pertinent part:

> A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof.

We have held that the failure of the state to corroborate its accomplice testimony warrants reversal and dismissal since it is essentially a failure by the state to prove its case. See our supplemental opinion on denial of rehearing in *Foster* v. *State,* 290 Ark. 495, 722 S.W.2d 869, *cert. denied,* ___ U.S. ___, 107 S.Ct. 3213 (1987).

Ark. Stat. Ann. § 41-303(1) (Repl. 1977) defines accomplice:

> A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:
>
> (a) solicits, advises, encourages or coerces the other person to commit it; or
>
> (b) aids, agrees to aid, or attempts to aid the other person in planning or committing it; or
>
> (c) having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

Mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of a legal duty to act, or failure to inform officers of the law is not sufficient to make one an accomplice. *Spears* v. *State,* 280 Ark. 577, 660 S.W.2d 913 (1983). The defendant has the burden of proving that a witness is an accomplice whose testimony must be corroborated. *Lear* v. *State,* 278 Ark. 70, 643 S.W.2d 550 (1982).

■ The evidence clearly reflects that Harrison was an accomplice and that Ivey was not. Ivey testified that although he was present at the crime scene, he did not participate in the commission of the crime. Terry Harrison corroborated this testimony. Other evidence introduced at trial establishes that Ivey simply witnessed the crime and then failed to inform the police. The jury was instructed pursuant to §§ 43-2116 and 41-303(1) and evidently concluded that Ivey was not an accomplice. The finding of a jury that a witness is not an accomplice is binding unless the evidence conclusively shows otherwise. *Spears, supra.* The evidence presented at trial does not show conclusively that Ivey was an accomplice.

■■ When there is no evidence from which a jury could find a defendant guilty without resorting to speculation and conjecture, a trial judge should grant a directed verdict. *Fortner v. State*, 258 Ark. 591, 528 S.W.2d 378 (1975). Ivey testified that he saw Scherrer cut the victim's throat, place her on a piece of plastic, and rape her. Since Harrison's and Ivey's testimony coupled with other circumstantial evidence are sufficient evidence of Scherrer's guilt, the trial court was correct in refusing to render a directed verdict.

## II. DISQUALIFICATION OF THE PROSECUTING ATTORNEY

Scherrer contends that the trial court prejudicially erred in denying his motion to disqualify the prosecutor, Sam Pope. He relies on our holding in *Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987), to the effect that when a prosecutor takes such an active role in the investigation of a crime that he potentially becomes a material witness for either the state or the defense, it is reversible error to allow him to serve as an advocate for the state in the case. In *Duncan*, the prosecutor engaged in extensive interrogation of the defendant. He testified not only at a suppression hearing in support of interrogation procedures but also, in argument to the jury, he described the events during the defendant's confinement and expressed his opinion regarding a crucial element of the case. We held that in so doing, the prosecutor committed reversible error since he effectively became a witness for the state and underwrote his own credibility.

■ Unlike in *Duncan*, the prosecutor did not interrogate Scherrer but merely took a statement from Ivey, a potential witness (after promising him limited immunity), which implicated Scherrer. The defense later called Pope to testify concerning this statement and the offer of immunity. Pope's actions were part of a prosecutor's routine preparation for trial. He did not take such an active role that he potentially became a material witness in the case. The trial court did not err in denying the motion to disqualify.

## III. FAILURE TO STRIKE VENIREMEN

■ Scherrer argues that because he had to use three of his peremptory challenges to strike jurors who should have been excluded for cause, he was forced to allow an objectionable juror to be seated. In order to preserve this point for appeal, an appellant must have exhausted his peremptory challenges and must show that he was later forced to accept a juror who should have been excused for cause. *Watson* v. *State*, 289 Ark. 138, 709 S.W.2d 817 (1986); *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982).

The sixth amendment to the Constitution of the United States guarantees a criminal defendant the right to unbiased and unprejudiced jurors. *See Haynes* v. *State*, 270 Ark. 685, 606 S.W.2d 563 (1980). The burden is on the party challenging the juror to prove actual bias. *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). When a juror states that he can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, he qualifies as impartial under constitutional requirements. *Glover* v. *State*, 248 Ark. 1260, 455 S.W.2d 670 (1970). A defendant is not entitled to a trial before jurors completely ignorant of the alleged crime. *Burnett* v. *State*, 287 Ark. 158, 697 S.W.2d 95 (1985), *rev'd on other grounds, Midgett* v. *State*, 292 Ark. 278, 729 S.W.2d 410 (1987).

■ After Scherrer exhausted his peremptory challenges, the trial court seated juror Rathey as the twelfth and final juror. At this point, Scherrer objected by stating that he would strike Rathey if he had a peremptory challenge. From the voir dire testimony, there is no evidence that Rathey was biased. In fact, he

indicated that he understood the presumption of innocence and would follow the law as explained by the court. Although Rathey stated that he had heard about the case on television, this in itself is not sufficient cause for removal. *Id.* There is no merit in Scherrer's contention that an objectionable juror was forced upon him.

## IV. VOLUNTARINESS OF CUSTODIAL STATEMENTS

Scherrer contends that the trial court erred in admitting custodial statements coerced from him and Jimmy Scherrer in violation of their fourteenth and fifth amendment right not to incriminate themselves.

Johnny Scherrer does not have standing to assert that Jimmy Scherrer's right not to incriminate himself was violated since this right is personal. *United States* v. *Nobles*, 422 U.S. 225 (1975); *Shinsky* v. *State*, 250 Ark. 620, 466 S.W.2d 911 (1971). In addition, since no custodial statements made by Jimmy Scherrer were introduced into evidence against Johnny Scherrer, Johnny Scherrer was not prejudiced in any way. *See Blake* v. *State*, 244 Ark. 37, 423 S.W.2d 544 (1968).

The issue that we must decide is whether Johnny Scherrer's custodial statements were involuntary. Such statements are presumed to be involuntary. *Fleming, supra.* On appeal the burden is on the state to show that the confession was made voluntarily, freely, and understandingly, without hope of reward or fear of punishment. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985).

In determining whether a custodial statement is voluntary, we make an independent review of the totality of the circumstances and will reverse only if the trial court's findings are clearly against the preponderance of the evidence. *Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Pursuant to the "totality of the circumstances" approach, we examine two basic components: the statements of the officer and the vulnerability of the accused. *Fleming, supra.* Some of the factors we consider in determining whether a statement was voluntarily made include the youth or age of the accused, lack of education, low intelligence, lack of advice as to constitutional rights, length of detention, repeated

and prolonged questioning, and the use of physical punishment. *Jackson, supra.*

On September 28, 1985, Scherrer was arrested and taken to the Dumas Police Department. After officers read him his *Miranda* rights, he was questioned about the murder. When Scherrer did not respond to officer Ed Gilbert's questions, Gilbert, who was approximately six feet from Scherrer, became so angry that he slammed his hand down on a glass desk top, breaking the glass. He then asked Scherrer how he would like it if his throat were cut. The officers who witnessed the episode noticed no change in Scherrer's demeanor. After this, Gilbert did not question Scherrer further, or at least did not question him for more than a few minutes, and then left the room.

Shortly thereafter, Chief Ronnie Ferguson initiated a conversation with Scherrer. Approximately fifteen minutes after Ferguson began talking with Scherrer, Ferguson told him that the reason Scherrer could not remember what he had done the day of the murder was that he was there when the girl was killed. In response, Scherrer remarked that his car may have been there but he was not.

In examining the totality of the circumstances, we find it significant that fifteen minutes elapsed between Scherrer's confrontation with Gilbert and the statement to Ferguson, that Gilbert was not present when Scherrer made the statement, and that Ferguson did not engage in coercion or intimidation during the interrogation. In addition, no physical punishment was inflicted on Scherrer, and he was advised of his constitutional rights prior to the thirty-minute questioning. For these reasons, we conclude that his statement to Ferguson was voluntarily and freely given.

## V. IRRELEVANT AND PREJUDICIAL TESTIMONY

Scherrer argues that the trial court erred in allowing irrelevant and prejudicial testimony by state's witness Terry Harrison that Johnny Scherrer, Jimmy Scherrer, and he would pass their time by watching horror and sex movies obtained from the local video rental store. Relevant evidence is defined by Ark. R. Evid. 401:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The fact that Scherrer passed the time watching sex and horror movies is irrelevant. The trial court should not have allowed the testimony. However, we cannot say this error warrants reversal as the prejudicial effect was minimal and the evidence of guilt so overwhelming. *Numan* v. *State*, 291 Ark. 22, 722 S.W.2d 276 (1986).

## VI. HEARSAY TESTIMONY

Scherrer argues that Glenda Bryant's testimony regarding two phone calls should have been excluded as hearsay. Bryant, a secretary at the victim's place of employment, testified at trial that while at work on Monday, September 16, 1985, two days before the murder, she received a phone call from someone who said that he was a friend of a man named Jim Woods. The caller asked for Ms. Watts and when told that she could not come to the phone, he said that he wanted Ms. Watts to speak with his friend, Jim Woods, about going back to school. The caller left directions to a local trailer park. Bryant also received a telephone call on Tuesday, September 17, 1985, from a man who said he was Jim Woods. The caller said that he wanted Ms. Watts to come talk to his mother about going to school.

Bryant's testimony was admissible as an exception to the hearsay rule contained in Ark. R. Evid. 803(3), as showing the declarant's [caller's] intent on the day of the murder. In *State* v. *Abernathy*, 265 Ark. 218, 577 S.W.2d 591 (1979), we held a statement by a witness that a murder victim had said she was going to meet the defendant on the night she was murdered was admissible under Rule 803(3), as showing the declarant's [victim's] intent on the night of the murder. *See also Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987). Since the testimony was admissible, we affirm the decision of the trial court.

## VII. DISCOVERY STATEMENTS

Scherrer contends that the trial court erred by allowing Mary Waltman to testify concerning a statement made to her by

Terry Harrison subsequent to the time Ms. Watts became missing since the prosecutor failed to provide this statement pursuant to a discovery request. Waltman testified:

> On Friday Terry didn't get out of the car. He acted okay on Thursday. I asked Terry to go around the trailer. That was on Thursday. He had told me he had to tell me something. He looked up at Johnny.

We will not reverse for errors that do not affect the essential fairness of a trial. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985). A litigant is entitled to a fair trial, not a perfect one. *Id*. Even assuming the trial judge erred in allowing Waltman's testimony, Scherrer has failed to show the prejudicial effect of Waltman's statement that Terry had to tell her something. We affirm on this point.

## VIII. PRIOR ARREST

Scherrer asserts that the trial court erred by not granting his motion for mistrial. He moved for a mistrial after state's witness Lewis Ash made reference to Scherrer's being "arrested for the first time" and to "the first time that Johnny got locked up." Ash made the statements while describing, on direct examination, his move out of a trailer he shared with Scherrer and the time frame in which he owned the automobile that he later sold to Scherrer. In each instance, the trial court admonished the jury to disregard the statements.

A decision to grant a mistrial rests within the sound discretion of the trial court. *Free, supra*. A mistrial is an exceptional remedy that should be used only when error is so prejudicial that it cannot be cured by an admonition to the jury. *Id.; see also Bennett* v. *State*, 284 Ark. 87, 679 S.W.2d 202 (1984).

In *Bennett* we held that a witness's reference to the defendant's prior bookings was cured by the trial court's admonishment to the jury. Likewise, the trial court's admonition in the instant case was sufficient to cure any possible prejudice to Scherrer. The court correctly refused to grant the motion for mistrial.

## IX. DISCUSSION OF WITNESSES DURING RECESS

Scherrer argues that the trial court erred in failing to declare a mistrial after a police officer and state's witness Ash discussed during recess Ash's testimony concerning the location of a knife allegedly used in the murder. Before taking a recess, the court instructed the litigants not to discuss Ash's testimony with him. After Ash stated on cross-examination that he had talked to an officer during recess, the defense moved for a mistrial. After hearing testimony concerning the content of the conversation, the trial court denied the motion.

As stated above, we will not reverse the trial court's refusal to declare a mistrial in the absence of an abuse of discretion. *Free, supra.* Although Ash testified after recess as to the location of the knife, his testimony was not affected by the conversation and did not prejudice Scherrer. In fact, he stated, "It's not true that he [Johnny Scherrer] gave me this knife to hide." We find that the trial court did not abuse its discretion.

## X. SENTENCING

Finally, Scherrer contends that the trial court erred in sentencing him to life imprisonment, and he should be allowed a rehearing on the sentencing phase of the trial or, in the alternative, a new trial. Sentencing is strictly controlled by statute. *Deaton v. State,* 283 Ark. 79, 671 S.W.2d 175 (1984). There is no constitutional right to be sentenced by a jury. *Spaziano v. Florida,* 468 U.S. 447 (1984); *Froman v. State,* 232 Ark. 697, 339 S.W.2d 601 (1960).

During deliberation on the appropriate sentence for Scherrer, the jury asked the judge to define ten to forty and to define life. The judge answered, "You can sentence him to a range of not less than ten years nor more than forty years or you can sentence him to life imprisonment." Subsequently, the jury asked, "Are we to pick a number in the ten to forty range or do we just say ten to forty?" The judge replied, "You are to pick a number in the ten to forty range or life." It is not clear why the jury asked, "Are we to pick a number in the ten to forty range or do we just say ten to forty?" Scherrer argues that this language indicates the jury

wanted to sentence him from ten to forty. Although this may have been the case, it is equally plausible that the jury did not understand the ten to forty instruction and merely wanted clarification before deliberating on ten to forty or life.

The jury later returned unable to reach a verdict. The judge sentenced Scherrer to life imprisonment pursuant to Ark. Stat. Ann. §§ 41-802 and 43-2306 (Repl. 1977), which provide that the court shall sentence a defendant if the jury fails to agree on a punishment. Therefore, the trial court's action was proper.

Pursuant to Ark. Sup. Ct. R. 11(f), we have made our own examination of all other objections made at trial and find no reversible error.

Affirmed.