Ronald CHELETTE *v.* STATE of Arkansas

CR 91-82                                                    824 S.W.2d 383

Supreme Court of Arkansas
Opinion delivered February 17, 1992

---

*Compton, Prewett, Thomas, & Hickey, P.A.*, by: *Floyd M. Thomas*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Ronald Chelette, was convicted of capital murder and sentenced to life without parole. He argues on appeal that the circuit judge improperly admonished the jury regarding a warrant that he had sworn out against the victim, and further that the circuit judge should have disqualified the prosecuting attorney because he was a witness in this case. We hold that neither point has merit, and we affirm the conviction and sentence.

The appellant and the victim, Walter Pinson, had a history of animosity caused in part by Pinson's relationship with Carrie Chelette, whom the appellant described as his wife. Threats between the two had been exchanged over a period of time before the slaying. On July 20, 1989, the appellant and Carrie Chelette's older sister, Mary Bass, visited the prosecuting attorney, John

Frank Gibson, and then signed an affidavit for a warrant alleging terroristic threatening by Pinson. They informed the authorities that ten days earlier on July 10, 1989, Pinson came to Mary Bass's house in the early morning, brandished a pistol, and threatened to kill the appellant. Gibson assisted the pair in preparing the affidavit. He then had them appear before Circuit Judge Paul K. Roberts for a probable cause determination. Judge Roberts found that probable cause existed for the warrant, but no warrant was ever issued.

On August 8, 1989, the appellant shot and killed Pinson behind Pinson's mobile home. According to the testimony of several state witnesses, including Union County Sheriff A. Pieroni, the appellant confessed to the following scenario. Carrie Chelette had a fight with Pinson and called the appellant and asked him to pick her up at Pinson's mobile home. When he arrived, Carrie carried some of her things out to the car. Pinson then appeared with a gun. The appellant grabbed a .22 rifle that was in the car, chased Pinson, and shot him five times behind the mobile home. The pair first tried to take Pinson to the hospital. Realizing that he was dead, they placed the victim in the trunk of his own car and fled to Mississippi in the appellant's car. They then returned to Arkansas the next day on August 9, 1989, and the appellant called Sheriff A. Pieroni and confessed. The appellant's position throughout has been the killing was done in self-defense.

On February 6, 1990, the prosecutor charged the appellant and Carrie Chelette with capital murder. On April 13, 1990, the appellant moved to disqualify Gibson as prosecutor on grounds that he would be called as a defense witness. The circuit court denied the request, and the trial of the appellant ensued on September 5, 1990. The State waived the death penalty, and the appellant was convicted and sentenced to life without parole.

The appellant first contends that the circuit judge impermissibly commented on the evidence when he admonished the jury concerning the appellant's affidavit against Pinson for terroristic threatening. The court gave the following cautionary instruction:

> Again, I will remind the jury that you are not to consider for the truth of the matters asserted in Defendant's Two, the affidavit, what is stated therein, if and when you see it, but that it is a complaint that came through, as far as it

comes through this witness, it is a complaint that was made.

Now, I am going to leave it at that, as far as the cautionary, because there may be other possible things there. . . .

The appellant's counsel argued vigorously to the circuit judge that the judge needed to clarify his instruction and advise the jury that the affidavit could be considered as evidence of the fact that the appellant had sought to invoke the legal process in a peaceful manner. The judge refused to comment further on the affidavit.

We hold that the circuit judge was entirely correct in his admonition to the jury and in his refusal to comment further. The judge mentioned as part of his admonition that the affidavit was a complaint against Pinson. There was other testimony of record, including the testimony of Judge Paul K. Roberts, that the appellant had sworn out a warrant (although the warrant was never issued) against Pinson for terroristic threatening. Thus, it was abundantly clear that the appellant had availed himself of the legal process. No additional comment from the circuit judge was required; the affidavit spoke for itself, and the jury was free to give it whatever weight it deemed appropriate. The court was also correct in advising the jury that the affidavit was evidence that the appellant had made a complaint but was not evidence of the truth of what was asserted in the affidavit.

For his second point, the appellant urges that the circuit judge erred in failing to disqualify John Frank Gibson as prosecutor on the basis that he was a defense witness and, thus, he could not be a witness at a trial in which he was also the advocate. Rule 3.7, Model Rules of Professional Conduct. The appellant did call Gibson as a witness, and Gibson testified in pertinent part as follows:

GIBSON: As I recall, I made a phone call or attempted to contact the sheriff's office, because they told me they had already been to the sheriff's office about this. And they were attempting to get a warrant on Walter Pinson for terroristic threatening or whatever I told them it would be under the circumstances that they gave me.

So I made contact with the sheriff's office and arranged fo the sheriff's office — I think it was B.M. Johnson was the one I talked to — to assist them in getting this warrant over here without me having to come over in person and attend to it.

DEFENSE COUNSEL: All right. Did you prepare the probable cause affidavit, or was it prepared —

GIBSON: I did not prepare this one. (Indicating). I prepared — I either prepared another one — . . . I either prepared another one or told the deputy what to prepare for them, because much to most people's surprise, the prosecuting attorneys don't issue warrants. We merely advise people who need a warrant as to how to get it done. Sometimes we will assist them in going before the magistrate, but in this case, we didn't. I contacted the sheriff's office and asked them to assist them.

. . . .

DEFENSE COUNSEL: Did you have any — Do you know whether or not a bench warrant was ever issued in this case?

GIBSON: I do not know. If it had been, there should be a file in the circuit clerk's office indicating that it had a number on it.

DEFENSE COUNSEL: Well, it certainly should have been issued?

GIBSON: That's what that was prepared for. Now, as to whether or not Mr. Chelette decided to go get it done, I don't know.

DEFENSE COUNSEL: Well, it was presented to the Circuit Judge, and it was authorized to be issued?

GIBSON: Right. Now, from that point, I don't know what arrangements were made, because it was the complaining parties, and the sheriff's office, whoever, or whoever assisted them in this, and I had no more to do with it after I, after they left my office.

■ We have held that when a prosecutor undertakes an active role in the investigation of a crime so that he potentially becomes a material witness either for the State or the defense, he no longer may serve as the advocate for the State. *Duncan* v. *State*, 291 Ark. 521, 726 S.W.2d 653(1987). In *Duncan*, the prosecutor testified in support of the interrogation procedures at the suppression hearing on the defendant's statement. Then, in his closing argument he described the procedures which he observed during Duncan's confinement and voiced his opinion about the propriety of those procedures. Under the *Duncan* facts, the prosecutor clearly became a material witness for the state.

■ Following *Duncan*, however, we held that disqualification is not required in a case where the prosecutor merely took a statement from a potential witness that implicated the defendant. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). We added in *Scherrer* that the prosecutor's actions "were part of a prosecutor's routine preparation for trial." 294 Ark. at 233; 742 S.W. 2d at 880. The case before us comes closer to the *Scherrer* situation. The prosecutor was performing a routine duty when he assisted the appellant and Mary Bass in signing an affidavit against Pinson. His testimony at trial described that ministerial duty — nothing more. His involvement in the case did not reach the level of that in *Duncan*; nor did he testify regarding facts favorable to the State arising out of his meeting with the appellant on July 20, 1989.

Rule 3.7 of the Model Rules of Professional Conduct states: "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: 1) the testimony relates to an uncontested issue. . . ." Here, the prosecutor did testify about an uncontested issue — the swearing out of the warrant by the appellant. No one maintains that this did not occur. In fact, Judge Paul K. Roberts, who made a probable cause finding based on the affidavit, testified for the defense on the same point as did Bradley County Sheriff Jack Gambill. In sum, Gibson's testimony was redundant on an uncontested issue.

■ The appellant counters that the prosecutor's arguments at trial also amounted to testimony. The prosecutor, indeed, did argue that the terroristic threatening affidavit was part of a plan or scheme:

## Opening Statement

You will hear evidence about a warrant being issued for Walter Pinson at the insistence of Ronald Chelette. You will hear evidence about the warrant being pulled down. And all this will fit together to show that there was actually a scheme going on between Carrie Chelette and Ronald, and they may not have even had a meeting of the minds. . . .

## Closing Argument

All this stuff about charging Walter with terroristic threatening was part of the plan. Ronald was after Walter, and he was trying to make it look like Walter was after him. And if he could not actually prove it, he was at least trying to get Walter after him.

What the prosecutor was describing in his opening statement and argument to the jury was his theory of the case developed after his meeting with the appellant and Mary Bass on July 20, 1989. This was legitimate argument — not testimony regarding facts he had observed. In *Duncan,* on the other hand, the prosecutor's closing argument contained facts he personally could verify which were favorable to the State. He then endorsed those facts by adding that in his opinion the authorities had acted appropriately. That amounted to testimony in his argument and is distinguishable from espousing a theory of the case. We hold that the circuit judge correctly refused to disqualify the prosecutor in this case.

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.