The Honorable Gordon Webb Prosecuting Attorney 14th Judicial District P.O. Box 483 Harrison, AR 72602-0483
Dear Mr. Webb:
I am writing in response to your request for my opinion on the following questions:
 1. Is it an automatic conflict of interest disqualifying the Prosecuting Attorney's office or any member of it from doing their job just because a defendant in a criminal matter is represented in a separate civil matter by a deputy from that same multi-county district acting in his private capacity?
 2. If that deputy, still in his private capacity[,] is called as a witness, does that create a conflict requiring the whole office to step aside?
You have posed these general questions in the wake of a particular challenge you report having recently faced in a since resolved prosecution. You indicate that the following occurred. Your deputy in County A privately represented the personal representative of an estate that held property in County B, which is also within your district. You employed another deputy in County B. In their official duties, the two deputies did not share offices, personnel or anything else, except that they both worked for you in their respective counties. The personal representative visited the estate's property in County B and threatened several purported trespassers with a gun, prompting your deputy in County B to file charges. A successor deputy in County B prepared to prosecute and listed the deputy in County A as a witness who would testify in his private capacity regarding the scope of the defendant's responsibilities as personal representative for the estate. The defense attorney subsequently moved that your entire office be disqualified and a special prosecutor appointed because the two deputies were part of "the same law firm."
RESPONSE
In my opinion, the answer to your first question is "no" with respect to all representatives of the prosecutor's office other than the deputy prosecutor who represents the criminal defendant in the civil action. If a deputy prosecutor serving one county of a multi-county district acts as private counsel on an unrelated matter for a criminal defendant in another county within the district, I believe "an automatic conflict of interest" arises only with respect to the prosecutor who serves as the defendant's civil counsel. Under a particular set of facts, the relationship between the deputy prosecutor representing the defendant in the civil matter and another prosecutor might be so close that disqualifying the other prosecutor would be warranted. However, in my opinion disqualification of the other prosecutors is by no means "automatic." With respect to your second question, I likewise do not believe that the entire prosecutor's office — or, for that matter, any particular deputy prosecutor other than the proposed witness — should be disqualified merely because a deputy prosecutor in County A is called as a fact witness in a criminal prosecution against a private client in County B.
Question 1: Is it an automatic conflict of interest disqualifying theProsecuting Attorney's office or any member of it from doing their jobjust because a defendant in a criminal matter is represented in aseparate civil matter by a deputy from that same multi-county districtacting in his private capacity?
No provision of Arkansas law prohibits deputy prosecutors in the Fourteenth Judicial District from engaging in the private practice of law.[1] Consequently, there is no inherent impropriety in the mere fact of a deputy prosecutor's privately representing a civil client who later becomes a criminal defendant. At issue is whether the fact of that civil representation precludes either that deputy or any of his colleagues within the district, including the prosecuting attorney, from prosecuting the criminal action.[2] I will consider these two alternatives in turn below.
Assume initially that the deputy prosecutor himself would have prosecuted the defendant but for the civil representation. Further assume that the civil representation is totally unrelated to the criminal matter. Is the deputy prosecutor disqualified from prosecuting his own client? Intuitively, the answer would appear to be "yes," based on the common recognition that a lawyer owes his client a duty of loyalty. This intuition is confirmed by Model Rule of Professional Conduct 1.7, which provides in pertinent part:
 (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
 (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
In the Comment to this Model Rule, the drafters expounded on this principle as follows:
 As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated.
As reflected in the "and" that connects them, subsections (a)(1) and (2) of Rule 1.7 are conjunctive requirements, meaning both must be met. In my opinion, even if a civil client were to consent to be criminally prosecuted by his own lawyer (a frankly startling proposition), the lawyer could not reasonably believe the prosecution would not adversely affect his relationship with his client.[3] The deputy prosecutor would consequently be ethically barred from prosecuting his client.
This conclusion applies a fortiori if the civil representation is related in some way to the subject matter of the criminal prosecution, as appears to have been the case in the actual events that prompted your question.[4] For the deputy prosecutor to proceed with the prosecution while privy to relevant information obtained in the course of representing his civil client would run afoul of the attorney-client privilege, the work product doctrine and Model Rule of Professional Conduct 1.6(a), which prohibits unauthorized disclosure of "information relating to representation of a client."
The next question is whether the deputy prosecutor's disqualification can be "automatically" imputed to his colleagues in the district. Model Rule of Professional Conduct 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of the practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, 2.2 or 3.7." As noted above, in my estimation Rule 1.7 would preclude the criminal defendant's civil lawyer from prosecuting his own client. However, this conclusion does not in itself warrant disqualifying all of the prosecuting attorney's staff. Unlike private lawyers, government lawyers working together in a particular office do not comprise a "firm." The "Terminology" section of the Model Rules of Professional Conduct defines the term "firm" as follows:
 "Firm" or "Law firm" denotes a lawyer or lawyers in a private firm, lawyers employed in the legal department of a corporation or other organization and lawyers employed in a legal services organization.
This definition does not include government lawyers who work in the same office. In their Comment to Rule 1.10, the drafters of the Model Rules expressly acknowledged the exclusion of government lawyers from the rule of imputed disqualification.
The rationale for this exclusion is discussed in the leading case of Fordv. State, 4 Ark. App. 135, 628 S.W.2d 340 (1982). At issue in Ford was whether the entire prosecuting attorney's office should be disqualified from prosecuting a case because the prosecuting attorney himself would be called as a witness to the crime. The Court initially noted that Disciplinary Rule 5-102(A) of the then applicable Code of Professional Responsibility required an entire firm to withdraw if one of its members was called as a witness in a trial. Id. at 138. However, the Court held that this rule did not apply to a prosecuting attorney's office:
 . . . The obvious reason for the rule is the common interest of the attorney/witness with his law firm in the outcome of the litigation and the appearance of impropriety. These reasons have validity where the attorney/witness has a financial interest in the outcome of the litigation, although the soundness of the rule has been questioned by some legal commentaries. See 6 Wigmore, Evidence, 911, pp. 775-780 (Chadbourne rev. 1976).
 However valid the reasons underlying the disciplinary rules may be, as applied to attorneys or firms engaged in practice for remuneration, they do not appear to have any validity in the case of a prosecuting attorney's office which consists of the prosecutor and several deputies. The relationship between the prosecutor, his deputies, and the State, their sole client, is fundamentally different from that which exists between law firms and the ordinary attorney-client relationship. The prosecuting attorney and his deputies have no financial interest in the outcome of criminal prosecutions conducted by themselves, unlike private law firms engaged in practice for remuneration. Public prosecutors have the duty to seek justice, not merely to convict. They must also disclose to the defense counsel any evidence that tends to negate the guilt of the defendant, mitigate the degree of the offense, or reduce the punishment.
Id. at 139-40 (footnotes omitted).[5] The Court consequently affirmed the trial court's denial of the defendant's motion to disqualify the prosecuting attorney and his entire staff. Id. at 141.
Despite the foregoing, there might be instances when the business affairs of a prosecutor representing a civil client who later becomes a criminal defendant are so interwoven with those of a colleague prosecuting the defendant that the various privileges discussed above are jeopardized. However, I think such instances would be exceedingly rare even if the two prosecutors shared an office and staff, given the feasibility of constructing a "Chinese wall" around each of the cases. Nevertheless, the appearance of a conflict in such cases might warrant the appointment of a special prosecutor. In the specific case that prompted your request, I believe the complete separation of the deputy prosecutors' offices and staff should have obviated any such concern.
Question 2: If that deputy, still in his private capacity, is called as awitness, does that create a conflict requiring the whole office to stepaside?
As a general rule, no. In Ford, the Supreme Court affirmed the trial court's determination that a deputy prosecutor could try a case acting under the authority of a prosecuting attorney notwithstanding the fact that the prosecuting attorney was a material witness at the trial.4 Ark. App. at 141. The rationale for this ruling is discussed in my response to your previous question. The Court in Ford suggested that it might have reached a different conclusion if the prosecutor had been the victim of the crime rather than merely a witness:
 We also see no conflict of interest or the appearance of a conflict of interest, which would indicate that the prosecuting attorney would be less than impartial in performing his discretionary functions. Had the prosecuting attorney been the victim of the aggravated robbery, such a conclusion might be reached; however, that is not the situation here.
This pronouncement suggests that disqualification of the entire prosecutor's office might be appropriate if some animus against the defendant might be imputed to the prosecutor, potentially influencing his supervisory actions.
The Supreme Court again addressed this issue in Duncan v. State,291 Ark. 521, 532, 726 S.W.2d 653 (1987):
 Duncan argues that the prosecutor, Wayne Matthews, and members of his staff should have been disqualified and a special prosecutor appointed. While Duncan disclaims any inference of unethical conduct by Matthews, he urges that his active participation in the interrogation, and the possibility of his being called as a witness by the state or the defense, encroaches on the rule that an attorney shall not serve as both an advocate and a witness in the same case. The trial court refused to order disqualification, but did rule that Matthews could not be called by the state at trial. Matthews did testify at the suppression hearing and was called by the defense to testify in the penalty phase of the trial on unrelated issues.
 We do not agree with appellant that the office of the prosecuting attorney should have been disqualified per se. See Ford v. State, 4 Ark. App. 135, 628 S.W.2d 340 (1982). We do agree that when a prosecutor undertakes an active role in the investigation of a crime to the extent that he becomes potentially a material witness for either the state or the defense he can no longer serve as an advocate for the state in that case. Enzor v. State, 262 Ark. 545, 599 S.W.2d 148
(1977); Bowling v. Gibson, 266 Ark. 310, 584 S.W.2d 14 (1979). The developments at this trial illustrate the necessity of such a rule: the prosecutor in Duncan's trial not only testified at the suppression hearing in support of interrogation procedures but in argument to the jury he described the events during Duncan's confinement and expressed his opinion as to a crucial element of the case.
This passage suggests that while a prosecutor might by his conduct render himself a potential witness and so disqualify himself as prosecutor, this disqualification need not extend to his deputies. The operative principle in this situation is thus the same as the principle that excludes government lawyers from the Rule 1.10(a) prohibition against a firm representing a client when one of its members has been disqualified: given that a prosecutor/witness has no financial interest in the outcome of the litigation, and further given that a prosecutor's only charge is to do justice on behalf of the state, there is simply no reason to impute an individual prosecutor's disqualification to all attorneys in the prosecutor's office.
Finally, I should note that under certain circumstances, a prosecutor/witness might be ethically permitted both to prosecute and to testify in a case. Model Rule of Professional Conduct 3.7 provides:
 A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) the testimony relates to an uncontested issue;
 (2) the testimony relates to the nature and value of legal services rendered in the case; or
 (3) disqualification of the lawyer would work substantial hardship on the client.
In Chelette v. State, 308 Ark. 364, 369, 824 S.W.2d 383 (1992), the Supreme Court relied on this rule to affirm a trial court's decision to allow a prosecutor to testify:
 We have held that when a prosecutor undertakes an active role in the investigation of a crime so that he potentially becomes a material witness either for the State or the defense, he no longer may serve as the advocate for the State. Duncan v. State, 291 Ark. 521, 726 S.W.2d 653 (1987). In Duncan, the prosecutor testified in support of the interrogation procedures at the suppression hearing on the defendant's statement. Then, in his closing argument he described the procedures which he observed during Duncan's confinement and voiced his opinion about the propriety of those procedures. Under the Duncan facts, the prosecutor clearly became a material witness for the state.
 Following Duncan, however, we held that disqualification is not required in a case where the prosecutor merely took a statement from a potential witness that implicated the defendant. Scherrer v. State, 294 Ark. 227, 742 S.W.2d 877 (1988). We added in Scherrer that the prosecutor's actions "were part of a prosecutor's routine preparation for trial." 294 Ark. at 233; 742 S.W.2d at 880. The case before us comes closer to the Scherrer situation. The prosecutor was performing a routine duty when he assisted the appellant and Mary Bass in signing an affidavit against Pinson. His testimony at trial described that ministerial duty — nothing more. His involvement in the case did not reach the level of that in Duncan; nor did he testify regarding facts favorable to the State arising out of his meeting with the appellant on July 20, 1989.
 Rule 3.7 of the Model Rules of Professional Conduct states:" A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: 1) the testimony relates to an uncontested issue. . . ." Here, the prosecutor did testify about an uncontested issue — the swearing out of the warrant by the appellant. No one maintains that this did not occur.
In my opinion, under an appropriate set of facts, these principles might enable a prosecutor called as a witness in his private capacity to continue prosecuting the action in which he is called.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Under Arkansas law, prosecuting attorneys in the larger judicial districts (Division A districts) are expressly prohibited from the private practice of law. A.C.A. § 16-21-118. Prosecuting attorneys in the smaller districts (Division B districts) are not subject to this proscription. See A.C.A. § 16-21-117 (defining Division A and Division B districts). In various districts, deputy prosecutors are likewise prohibited from the private practice of law. See, e.g., A.C.A. §§16-21-1703 and 16-21-1102 (barring full-time deputy prosecutors from private practice in the Twelfth and Sixth Judicial Districts).
[2] I appreciate that the first of these alternatives — i.e., the deputy himself prosecuting his own private client in the deputy's own county — does not accord with your actual experience, which involved two deputies in different counties. However, as phrased, your first question encompasses both possibilities.
[3] The consent of the other client required by Rule 1.7(a)(2) would be the state's permission for the deputy to proceed with the prosecution despite his private representation of the defendant.
[4] I assume the representative of the estate perceived himself as acting on the estate's behalf in assaulting the perceived trespassers on estate property. I further assume that the state's purpose in calling the deputy prosecutor as a witness was to establish that assault was not to be found on the estate representative's job description. This testimony would consequently be clearly adverse to the deputy prosecutor's civil client.
[5] There may be some tension between this pronouncement and the ruling in Smith v. State, 6 Ark. App. 228, 235, 640 S.W.2d 805 (1982), in which the Court approved replacing a witness/deputy prosecutor with the deputy prosecutor's law partner. Although the Court invoked Ford in support of its holding, Smith is distinguishable in that it involved a private lawyer earning public money that presumably benefited his private law partner as well as himself. The Ford rationale for allowing the substitution would not appear to apply in this instance.